## State v. Prater
### [Cite as 8 AOA 583]

*Case No. 90AP-2680*
*Franklin County, (10th)*
*Decided December 31, 1990*

*Michael Miller, Prosecuting Attorney, and Joyce S. Anderson, for Appellee.*

*Randall M. Dana, Ohio Public Defender, and Dory A. Sutker, for Appellant.*

REILLY, P.J.

This is an appeal frown a jury trial convicting defendant of abduction in violation of R.C. 2905.02 with a specification of a prior aggravated burglary offense. Defendant asserts two assignments of error:

"I. Did the trial court's failure to make an inquiry into the reasons for appellant's request to obtain new counsel deny him the rights to counsel and due process?

"II. Was the verdict against the manifest weight of the evidence?"

In the first assignment of error, defendant contends that his rights under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Section 10, Article I of the Ohio Constitution were abridged because the trial court failed to inquire into his objections with the public defender assigned to his case.

Defendant was arrested on September 21, 1989. The grand jury indicted him on October 12, 1989. His trial was scheduled for February 5, 1990. On the day of trial, just prior to bringing the jury in for voir dire, the following exchange occurred:

"MR. ANDERSON. Your Honor, if I could have a couple minutes with my client.

"THE COURT. Sure. Mr. Prater, your lawyer, Mr. Anderson, tells me that you want a different lawyer in this case, whether I should appoint one or whether you should go out and hire one.

"Let's put it this way emphatically and without delay: My responsibility here, Mr. Prater, is to do the best job that I can to see to it that you get a speedy public jury trial. My responsibilities. A lawyer was appointed, Mr. Anderson. I have known Mr. Anderson as long as he has been practicing before the court. I don't have any concerns about his ability to represent you. I think he is a capable, conscientious, honest lawyer who is trying to do his job, as he always does with people he represents. He is just in a position where the prosecutor is not offering you anything more than what has been offered you.

"Now, this is where we are. It is fish or cut bait, because the prosecutor is sitting here and he isn't saying anything.

"Now, we are going to try this case this afternoon. I am not going to appoint another lawyer for you. We are going to go to trial. We had this case set last week. It was well understood what we were going to do today. This is what we are going to do. We are going to bring a jury up here pretty shortly.

"You can go get the jury. That will be all.

"MR. PRATER. I can't. I don't want him representing me for a lawyer.

"THE COURT. I am telling you he is your lawyer and he is going to represent you in this case because you are entitled to a speedy public jury trial. I think you are entitled to it. I might further reiterate, you have been around the system enough that you know whether or not --

"MR. PRATER. I have been in the system roadblock, and I figured that --

"THE COURT. The reason why you don't have a lawyer is because you haven't been able to hire one.

"MR. PRATER. I ain't had enough time.

"THE COURT. You have had enough time. You have been in jail here since --

"MR. BRAUN. The arrest was September 21, 1989.

"THE COURT. That is plenty of time to seek out a lawyer. If you are unhappy with the appointed lawyer, you could have gone out and hired a lawyer. Certainly, I am not going to appoint anybody else, because I think your lawyer is perfectly competent and capable to represent you in this case.

"I don't know anything about your case, whether you have a good case, as you may

put it, or a bad case, or you as the prosecutor may put it. I don't know anything about it. The only thing I know about is I have been acquainted with some of the record involved here. This came up during plea negotiations. So just go get the jury and we will get started ***." (Tr. 7-10.)

After the jury was impanelled, defense counsel again brought defendant's request to the attention of the court:

"MR. ANDERSON. Your Honor, my client has expressed a very strong desire to have me relieved as counsel today. In fact, he refuses at this point to allow me to represent him. His mother is in the courtroom. She is in the back. She has informed me that apparently she has contacted Blaise Baker, and I am not sure if he is on his way here now. I am not sure when she contacted him, but apparently there has been some contact. I have not been in a position to verify that, however.

"THE COURT. Well, we took up this matter yesterday. We have a jury. The defendant is in jeopardy. As I made my record yesterday, we have a competent lawyer to represent this defendant. He has been active in this case since its inception. The defendant has been through this system before, and this defendant knows why he is in this position. I am not saying the defendant is seeking delay, and I am not saying that the defendant recognizes some disability in the case which is being presented here with respect to what may be the outcome of this case, but I am not going to switch counsel in midstream here, because it would necessitate a continuance. We have a jury. As I have said, the defendant is in jeopardy. We will proceed with the trial of this case, and you will represent him because you have been appointed to do so. That will be all.

"MR. PRATER. Your Honor --

"THE COURT. Now, I am not listening to anybody here. I have decided we are going to proceed with this trial. You had all the opportunity in the world to take this matter up weeks and even months ago.

"MR. PRATER. No.

"THE COURT. And for that reason, this defendant is entitled to a speedy public jury trial. The State of Ohio is entitled to have this case tried and disposed of, and we are not going to have this judicial system manipulated at the whim of people who want to switch counsel in midstream, and this isn't midstream, this is the end of the road.

"Would you get the jury out here, please.

"That will be all. You should concentrate on letting your lawyer handle this case.

"MR. PRATER. I fired him Thursday. Get away from me, man." (Tr. 72-74.)

Defendant maintains that the court did not inquire into the basis for his complaint about assigned counsel. Defendant relies on *State v. Deal* (1969), 17 Ohio St. 2d 17, wherein the court held in the syllabus:

"Where, during the course of his trial for a serious crime, an indigent accused questions the effectiveness and adequacy of assigned counsel, by stating that such counsel failed to file seasonably a notice of alibi or to subpoena witnesses in support thereof even though requested to do so by accused, it is the duty of the trial judge to inquire into the complaint and make such inquiry a pact of the record. The trial judge may then require the trial to proceed with assigned counsel participating if the complaint is not substantiated or is unreasonable."

Hence, the court held that the trial court had a duty to investigate a complaint concerning the effectiveness of counsel and to make its investigation on the record to provide for effective appellate review.

In *State v. VanMeter* (July 11, 1985), Franklin App. No. 84AP-987, unreported (1985 Opinions 2062), this court reversed a conviction where, prior to commencement of trial, the defendant requested a continuance so that he might obtain new counsel. The public defender indicated to the court that he and the defendant had "fundamental differences with the type of defense that would be presented" and that defendant felt his counsel was not "looking out for his best interest." *Id.* at 2063. We reversed because the court "*** did not make any particular inquiry *** as· to [defendant's] beliefs regarding his counsel's representation, his lack of confidence in the quality of representation, or the like." *Id.*

In *VanMeter,* the trial court did not know that defendant met with his public defender only one day prior to the trial. Further, during opening statement by the state, the defendant appeared upset. At the close of the state's case, the public defender again stated that defendant wanted to present a defense, but desired a continuance to consult with

another lawyer. Instead of inquiring about the matter, the trial court told the jury that defendant did not desire to present any defense and then charged them.

After discussing several federal cases concerning the duty to inquire, see *Brown v. Craven* (C.A.9, 1970), 424 F. 2d 116; *Monroe v. United States* (C.A.D.C. 1978), 389 A. 2d 811, certiorari denied, 439 U.S. 1006; *Sawicki v. Johnson* (C.A.6, 1973), 475 F. 2d 183, this court wrote in *VanMeter:*

"The court finds that the federal cases cited herein comport with the approach taken by the Supreme Court decision in *Deal, supra,* that, where allegations of inadequate and ineffective representation are made at pretrial, the trial court has a responsibility to conduct an inquiry sufficient to determine the scope and veracity of the allegations and to provide meaningful appellate review as well. ***" *Id.* at 2067-2068.

This court noted that, despite the defendant's protest about fundamental differences with his counsel, the trial court did not personally address the defendant, but instead indicated "we are going to trial" several times. *Id.* at 2068. Further, the court did not make findings of fact on the record, but instead simply said to defense counsel: "I am not going to fire you just because he doesn't you know, want you on his case." *Id.* After voir dire the court similarly responded: "You are not going to change my mind about anything about the way the trial is being conducted." *Id.* Considering these facts, this court found that the court breached its duty to the accused. Hence, we reversed the conviction and remanded to the trial court for a "*** reinvestigation to be put on the record, with the instruction that, if the claim is determined to be unfounded, the trial court may re-enter the judgment of conviction. In the event that the court finds the allegations of ineffective assistance of counsel well founded, the court may, in the exercise of its sound discretion, grant a new trial." *Id.* at 2069.

The facts of this case are similar to the *VanMeter* case. Instead of asking defendant why he did not want the public defender representing him, the trial court responded, saying: "The reason why you don't have a lawyer is because you haven't been able to hire one." (Tr. 9.) The court indicated its unfamiliarity with the case. The court also expressed its concern about a speedy trial, a

right which defendant may waive. Moreover, the court stated that it was apparent that defendant was not seeking delay. Instead of holding a hearing or asking a few questions, the court denied defendant new counsel based on the court's personal knowledge of the reputation, competence and performance of this defense counsel in other cases.

On the particular facts of this case, the trial court breached its duty to inquire. The investigation required may be brief and minimal. See *State v. Lee* (May 24, 1990), Franklin App. No. 89AP-1036, unreported (1990 Opinions 1956). The inquiry, however, must be made and put on the record under *Deal, supra.*

Defendant's first assignment of error is well-taken.

In the second assignment of error, it is argued that the conviction is against the manifest weight of the evidence. The basic principles are well documented. A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of the offense have been proven beyond a reasonable doubt. *State v. Eley* (1978), 56 Ohio St. 2d 169, syllabus. It is fundamental that the weight to be given the evidence and the credibility of witnesses are primarily for the trier of facts. *State v. Thomas* (1982), 70 Ohio St. 2d 79; *State v. DeHass* (1967), 10 Ohio St. 2d 230, syllabus. It is the trier of fact, and not the appellate court, that is to be convinced. *State v. Petro* (1947), 148 Ohio St. 473, 501.

The abduction statute, R.C. 2905.02, provides:

"(A) No person, without privilege to do so, shall knowingly do any of the following:

"(1) By force or threat, remove another from the place where he is found;

"(2) By force or threat, restrain another of his liberty, under circumstances which create a risk of physical harm to the victim, or place him in fear;

"(3) Hold another in a condition of involuntary servitude.

"(B) Whoever violates this section is guilty of abduction, an aggravated felony of the third degree."

The state's first witness was the alleged victim, Chena King, who related the following events. On November 18, 1988, at 10:15 p.m., Chena began walking down East Mound

Street to a bar called Alexander's, where she planned to meet some friends. As she passed Sunshine Christian Academy, Chena saw a man standing on the porch. She continued walking, but the man quickly jumped out in front of her. He asked Chena her name.

After she told him, she tried to get around the man, but he moved with her. When she did get past him, the man came up behind her and grabbed her, forcing her up a hill and into a construction shack. She bit the man on the hand, but this had no effect. Then, the man placed an object up to her neck. At the time, Chena thought it was a gun.

Chena started struggling and screaming. She managed to break loose and ran away. The man chased her. She ran up to some apartments and began banging on doors. The man was behind her. She tried the handle on one apartment door and it opened. She rushed inside and slammed the door shut, locking it behind her. The man disappeared. Chena looked around the apartment. There was nobody there, although the television was on and toys were on the floor. She stayed in the apartment for several minutes. After looking outside to see if it was safe, she ran a block down the street to her friend Willie's house. He was home. He noticed that Chena was bleeding on the neck. Willie went out to look for the perpetrator, but did not find him.

Chena did not report the incident until two weeks later, after she told some friends and co-workers about what happened. Her supervisor, a former police officer, helped her make the report. At first, Chena could not positively identify any suspects from police department photographs. Then, while working at her drive-thru job, Chena saw the man who abducted her. She contacted the police and identified this man as the defendant. Thereafter, she was able to identify defendant from a police photo array. Moreover, she was able to recall that, after the man had jumped in front of her at the Sunshine Christian Academy and asked her name, she asked him his name. He replied: "Tony."

Aside from Chena, the state's only other witnesses were police officers. One officer investigated the area and testified that there was a shack-like, construction company structure where Chena said she was abducted. Defendant did not testify nor present a defense.

Defendant argues that Chena's testimony is not credible. Defendant points out that Chena did not present any witnesses to corroborate her testimony. Further, defendant emphasizes that Chena did not immediately report the incident to the police nor did she seek medical attention for the claimed injury to her neck. Defendant contends that several items that Chena testified to were not disclosed in any police report. For instance, there is no mention in any report that the man said his name was "Tony," or that Chena's neck was injured. Additionally, it is argued that Chena's memory about the event was not entirely clear. She admitted that it was dark that night. Yet, she was able to positively identify defendant four months later.

The verdict was supported by the evidence and thus it was not against the manifest weight of the evidence. Chena's testimony, if believed, would support the conclusion that defendant removed her by force to the shack and restrained her. Chena did not know defendant and there was no reason or motive to lie. Her identification of defendant was positive and firm. These are questions for the jury as the trier of the facts.

Defendant's second assignment of error is not well-taken.

Defendant's first assignment of error is sustained. Defendant's second assignment of error is overruled. The judgment of the trial court is reversed and remanded for a reinvestigation to be put on the record, with the instruction that, if defendant's claim of ineffective assistance of counsel is determined to be unfounded, the trial court may re-enter the judgment of conviction. In the event that the court finds the claim well-founded, the court may, in the exercise of its sound discretion, grant a new trial.

*Judgment reversed and
cause remanded
with instructions.*

STRAUSBAUGH and YOUNG, J.J., concur.