JOURNAL ENTRY AND OPINION
Defendant-appellant, John Moore, Jr., appeals his conviction for aggravated robbery and two counts of kidnapping, all with firearm specifications. He also appeals his maximum and consecutive sentences.
Defendant and his accomplice arrived very early one Sunday morning at the Hard Rock Cafe in Tower City. They told the night cleaner who let them in that they were there to interview for jobs. They proceeded to the "safe room" where the kitchen manager was finishing counting money. When defendant's accomplice held a gun to her head, the manager opened the safe and gave him the paper money. Moore demanded she give him the coins as well. The accomplice then left the room and returned with another female employee. The men proceeded to tie up both women with duct tape. They also gagged the employee with tape but left the manager without a gag when she told them she had allergies and would choke if she were gagged.
After the men left, the women managed to free themselves and called the police. The manager supplied the police with a surveillance tape of the robbers, but because the tape had been reused so many times the quality of the pictures was poor. After NASA enhanced the tapes, still pictures were taken from them which showed defendant in a distinctive baseball cap.
Several days prior to this robbery, a private home had been robbed and its occupant also had been bound and gagged with duct tape. Defendant's accomplice, Lamar Chaney, was identified in a line-up as one of the perpetrators in the private home robbery. The accomplice was then identified by the manager, employee, night cleaner and a fourth employee as one of the robbers at the Hard Rock Cafe.
The detectives questioned one of the accomplice's co-defendants, Trent Willis, from the private home robbery, who led the police to defendant's home. The police searched defendant's home and later questioned him. Defendant signed a written confession to the Hard Rock Cafe robbery. The police also took a photo of defendant in the distinctive cap from defendant's home. Finally, an analysis of phone records corroborated all the details contained in defendant's confession.
Appellant's initial appeal stated four assignments of error. After this court granted him leave to supplement his appeal, he stated four additional assignments of error.
For his first and second assignments of error, defendant states:
 I. THE TRIAL COURT DEPRIVED JOHN MOORE OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, WHEN IT FAILED TO MAKE AN ADEQUATE INQUIRY INTO MR. MOORE'S COMPLAINT THAT HIS TRIAL COUNSEL WAS NOT DOING AN ACCEPTABLE JOB AND HAD MR. MOORE PROCEED IN THE TRIAL WITH THE SAME ATTORNEY.
 II. THE TRIAL COURT ERRED AND DENIED JOHN MOORE HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, WHEN IT OVERRULED HIS MOTION TO WAIVE COUNSEL AND REPRESENT HIMSELF.
Defendant argues that when the trial court refused to hear his complaints about the trial tactics of his attorney and either appoint another attorney or allow him to proceed pro se, he was denied effective assistance of counsel. The state counters that because defendant did not raise this issue until the state had nearly finished its case in chief, the request was untimely and the court properly denied it.
On September 14th, after several days of trial, immediately following a break in which the attorney was instructed to discuss whether or not a certain witness should be called, defense counsel approached the bench and stated,
 my client has given me a request of instructions and I have informed him that this is not the appropriate time to place this on the record. And I'm telling the court that I would like time after the State's case and before our case, but he has some things which I think they are perhaps dissatisfaction [sic] with the way I'm representing him that he would like to tell the court or have me tell the court.
 THE COURT: Well, that's all very nice. You know, we will certainly take that all into account. Thank you. Let's go.
The court then tried to proceed with trial, but defendant repeatedly interrupted. He stated, "I asked [my attorney] to deliver a letter. I don't think he gave it to you." The court informed him that it was not the appropriate time for this discussion, to which defendant replied, "Excuse me, your Honor, before we start up, I want to make sure I preserve —." The court interrupted him and told him not to speak in front of the jury. The court then said "When we are at a break, we will have another —." Defendant then interrupted the court and said, "we were at a break. He handed you a note."
Following discussion of the events of a trial of a co-defendant, the court informed defendant that he could say whatever he wanted when he testified. Defendant attempted to clarify that "[t]hese are questions for witnesses that were already here." The court told him to be quiet and that he could say anything he wanted to on the witness stand.
Defendant responded, "I'm trying to communicate with the court but nobody is letting me." The court again ordered him to stop speaking until the jury was no longer in the room.
Later that day, the court spoke on the record with the defendant outside the presence of the jury. Defendant again explained that his attorney was not asking questions he considered necessary for his defense and that he had written a note to the judge informing him of it. The judge acknowledged that he had not seen defendant's note and told defendant that although he could suggest questions to his counsel, counsel "is the one who makes that decision as to the specifics of the questions and witnesses."
Defendant asked, "then what do I have to do to make a decision on what questions are asked and who's called and not called? What do I have to do right now to do that because I feel that I have some very important questions that are not being asked." The court responded by telling him first that his court-appointed counsel was very qualified and "is highly respected in the community."
The court went on to tell him, "[n]ow you could have hired your own attorney or you can go pro se and be your own attorney * * *." He then discouraged defendant from going pro se, stating that he had never seen anyone succeed pro se. Nevertheless, defendant then asked repeatedly to go pro se.
The court first told him "[i]t is too late for that now. You have already started with an attorney. I don't believe you can go mid trial." Tr. at 844. The court also stated that defendant had not "demonstrated any knowledge of the law or willingness to comply with the orders of the court or understanding of the rules of evidence." Id. At that point defendant gave the brief note to the judge stating his complaints about his attorney.[1]
The court then changed its position and told defendant to write and submit his request during the lunch break, including "your plans for trial, your strategy, * * * your general capability of conducting a trial" and stated it would review the request. Defendant reiterated that all he wanted was "a right to call them witnesses." Tr. at 845.
After the lunch break, defense counsel told the court that defendant had given him the "written statement. With the court's permission I will review it with him and we can attach it to the record tomorrow morning." The court instructed counsel to remind it about the letter before trial began in the morning. The court then proceeded with the cross-examination of one of the detectives.
The next morning counsel informed the court that he had the letter the court had instructed defendant to write. The court responded, "Well, I have the first letter he sent. Is there another letter?" The court was informed that the letter in discussion was the one he instructed defendant to write during the previous day's lunch break. The court responded, "[w]ell, send it up when you find it.[2] That's all. * * *" The court accepted the letter and then ordered the jury into the room. The defense then began its case, calling the defendant as a witness.
Later that day while at a side bar, the court stated "while we're at the side bar, we have — whatever you think is necessary in the defense. I have a letter from him in which he vacillates [sic] the letter given to me a minute ago." The court then states that defendant "doesn't specifically ask to take over his own defense." Defense attorney contradicts the court saying he thinks that the defendant does want to take over his own defense. The court responds, "He wants to and he later says he would like to go pro se, but I'm not sure. He wants to go as cocounsel [sic] apparently, but, he got up on the witness stand so I don't know if that's an abandonment of what he just gave me beforehand or what.
Anyway, we will discuss it with him. We told him in the last trial, and I told him in this trial he is allowed — I will give him a chance to make a speech at the end of your examination. If he wants to make a statement outside of what he said, he can * * *."
Finally, the court said, "[w]e will inquire of him later on again to see where he is at. I can't make heads or tails from that letter, the combination of the letter and his actions getting up on the witness stand."
During another break in defendant's testimony, the court addressed the defendant on the record while the jury was out of the room. The court said:
 Now, the court received your letter here this morning. I read it after you got on the witness stand, Mr. Moore, and you have asked a couple of things. I'm not sure what you want, but you wanted a chance to address the jury. The court would certainly give you that. You had the chance. Your attorney asked is there anything you wanted to say. You gave your statement. This is what you are looking for. Do you want to impress the jury again at the end of this?
Defendant replied that he wished to apologize to the jury and the court for his interruptions. The court reminded him that he would be opening himself up to cross-examination. Defense counsel began to speak, "Your Honor —" but the court interrupted him saying, "[s]o you talk it over and whatever you want to do, that's fine. Okay. Have a nice break here." Nothing further was said about defendant's request.
First we note that to make a case for ineffective assistance of counsel, the defendant must prove that his counsel's performance fell below "an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley
(1989), 42 Ohio St.3d 136, syllabus paragraph two. Herein, this defendant cannot demonstrate any instance of unreasonable representation. Further the defendant did not show that but for his counsel's representation he would have been acquitted. For all of these reasons, all of the defendant's assignments of error, including ineffective assistance of counsel, fail and are hereby overruled. Therefore, unless defendant can show that but for his counsel's representation he would have been acquitted, all of his assignments of error addressing ineffective assistance of counsel will fail.
The action of the trial court in dismissing defendant's request for new counsel or to proceed pro se requires examination, however, because it affects defendant's constitutional rights. In State v. Deal (1969),17 Ohio St.2d 17, syllabus, the Ohio Supreme Court held that
 [w]here, during the course of his trial for a serious crime, an indigent accused questions the effectiveness and adequacy of assigned counsel, by stating that such counsel failed to file seasonably a notice of alibi or to subpoena witnesses in support thereof even though requested to do so by the accused, it is the duty of the trial judge to inquire into the complaint and make such inquiry part of the record. The trial judge may then require the trial to proceed with assigned counsel participating if the complaint is not substantiated or is unreasonable.
The court must, however, conduct an inquiry specifically addressing defendant's complaints, making a record of the discussion. "The trial court had a duty to investigate a complaint concerning the effectiveness of counsel and to make its investigation on the record for effective appellate review." State v. Prater (1990), 71 Ohio App.3d 78, 82.
The state claims that Prater is distinguishable because the defendant in Prater made his request before trial began. There is nothing in the case law, however, to state that a defendant must make a request to dismiss his counsel or to proceed pro se before trial has begun. Indeed, the Supreme Court of the United States noted that a defendant's right to assistance of counsel "implies a right in the defendant to conduct his own defense, with the assistance at what, after all, is his, not counsel's trial." Id. at 174, emphasis in original. Defendant argued that because his counsel was ignoring his requests for the appearance of witnesses and refused to ask the questions defendant requested he ask, he wanted his counsel dismissed. "An unwanted counsel `represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense." Faretta v. California (1975),422 U.S. 806, 821.
The state argues further that defendant does not have a right to "hybrid" representation, and that once his attorney began the trial, defendant would no longer be allowed to participate. The state misconstrues defendant's request: defendant was not asking for "hybrid" representation, that is, representation which would allow him to conduct part of his defense and the attorney to continue to conduct part of it.
 Once a pro se defendant is given the opportunity and elects to have counsel appear before the court or jury, his complaints concerning counsel's subsequent unsolicited participation lose much of their force. * * * Once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced.
McKaskle v. Wiggins (1984), 465 U.S. 168, 183, emphasis added. "It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of `that respect for the individual which is the lifeblood of the law.'" Faretta v. California (1975), 422 U.S. 806, 834, citations omitted.
On four separate occasions the trial court discussed with the defendant his dissatisfaction with his counsel. Although defendant told the court in his letter that he wished to proceed pro se, he then took the stand and allowed his counsel to conduct direct examination on him. Thus although he requested permission to proceed pro se in his letter to the court, he immediately contradicted his request by having his attorney continue to defend him. This "subsequent appearance by counsel must be presumed to be defendant's acquiescence * * *." McKaskle at 183.
The trial court expressed confusion over defendant's request. It failed, however, to properly address defendant's complaint at a time when the defendant could have acted on his own behalf. Although the court technically complied with the requirements of Deal, the better course would have been to give the defendant the opportunity to explain his request when he initially raised his complaint about his attorney. By the time the court allowed him to speak his piece on the record, defendant had already testified and essentially waived his request to proceed prose.
Further, defendant's objection to his attorney's tactics related to questions not being asked of the state's witnesses. By the time the court addressed the complaints, the trial was well into the defense phase. Although after writing his letter to the judge defendant never again raised his request to question the state's witnesses, the court's manner in handling his request was less than effective. The far preferable course would have been for the court to address the issue the first time it was raised, inquire of the defense counsel its reason for omitting the requested questions and witnesses, and then determining whether the defendant's requests were substantiated or reasonable. Deal, syllabus.
The hearing on defendant's request need not have been lengthy. Rather, the court only needed to elicit the attorney's statement that the tactics requested by defendant were against his interest, and the court could have properly proceeded with the attorney representing the defendant.
Although we overrule this assignment of error, the trial courts are advised to seriously and properly address defendants' requests to change counsel or proceed pro se.
For his third assignment of error, defendant states:
 III. JOHN MOORE WAS DENIED HIS CONSTITUTIONAL RIGHT TO CROSS-EXAMINE THE WITNESSES AGAINST HIM, WHEN THE TRIAL COURT IMPROPERLY OVERRULED HIS REQUEST. UNDER OHIO RULE OF CRIMINAL PROCEDURE 16(B)(1)(g), TO CROSS-EXAMINE A STATE'S WITNESS WITH MATERIAL INCONSISTENCIES IN HER PRIOR STATEMENT.
Defendant argues that one of the state's witnesses, one of the two women who were tied up with duct tape during the robbery, contradicted herself when she gave testimony at trial which conflicted with the signed statement she gave to the police. He claims that although she never described the second robber in her signed statement, she stated in her testimony that she had.
The court denied defendant's counsel's request to use the witness's statement to impeach her accuracy of recall. Although the defense had reviewed the statement at the close of direct, at which time he saw no inconsistencies, after he began cross-examination, he renewed his request. The court responded,
 Well, first of all, Rule 16, at the conclusion of the direct you can look for material omissions. Now that doesn't say anything in Rule 16 about reapproaching the bench about any inconsistency you may have created during her cross-examination. I don't think that's the theory of the rule.
Tr. at 469. The court added several pages later:
 You had that opportunity for inconsistencies. Now you can't develop an inconsistency and wish to use the statement.
* * *
 You examined her about an omission that wasn't in the statement you read and now you want to come back and talk to her about why it isn't an omission. You could also ask her about Perry's trip to Antarctica.
Id. at 472. When the defense again renewed its request to use the witness's statement to impeach her, the court said, "I'm not expanding Rule 16 to where it's never been before." Tr. at 493.
Crim.R. 16(B)(1)(g) states:
 Upon completion of a witness's direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness's written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
 If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.
The court misconstrued the scope of Crim.R. 16(B)(1)(g). In a similar case, this court held in State v. Ellis (1975), 46 Ohio App.2d 102, 105:
 [t]he court below clamped the rigid meaning of "immediately" upon the portion of Crim.R. 16(B)(1)(g) which reads, "Upon completion of a witness's direct examination at trial. the court on motion of the defendant shall conduct an in camera inspection * * *." Such arctic administration of the right does not comport with the objectives of a just determination. We hold that whether a defendant's inquiry discloses the existence of a witness statement immediately upon the completion of the direct examination or at any other time
during the cross-examination, he is entitled to the benefits of Crim.R. 16(B)(1)(g).
Id. Emphasis in original. This court later restated this principle inState v. Howell (Jan. 30, 1997), Cuyahoga App. No. 69805, unreported, 1997 Ohio App. LEXIS 297: "a motion is timely made anytime after completion of direct examination prior to completion of cross examination." Id. at 4.
The Ohio Supreme Court has also held that the motion under Crim.R. 16(B)(1)(g) "can be made any time after the completion of the witness's direct examination, but prior to the completion of the witness's cross-examination." State v. Schnipper (1986), 22 Ohio St.3d 158,159-160.
The trial court's error is harmless, however, because an examination of the record and the witness's statement shows no inconsistency. The witness's signed statement contains a description of the first robber, but no description of the second one. In her testimony, she stated that she did not remember if her statement contained a description of the second robber. The witness had no control over which part of her oral description was transcribed by the police for her signature. She only stated that she gave the police a description, not that the description was contained in her statement. On the witness stand, she reiterated her recollections of her conversation with the police "[t]o the best of [her] knowledge." Tr. at 468. She never claimed that her written statement contained a description of the second robber, so the defense had nothing to use to impeach her.
Had the trial court honored the defense's request for its review of the statement, the court would have been able to deny the defense's request for a repeat view of the statement because no inconsistency existed.
Because no inconsistency existed between the witness's statement and her testimony, the third assignment of error is overruled.
For his fourth assignment of error, defendant states,
 IV. JOHN MOORE HAS BEEN DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW BY HIS SENTENCES, AS SAID SENTENCES DO NOT COMPORT WITH OHIO'S NEW SENTENCING LAWS.
The trial court sentenced defendant to ten years on the aggravated robbery charge, ten years each for the two kidnaping charges, and three years on each gun count. "The gun counts will run concurrent, but consecutive to all other counts. All sentences of ten years will run consecutive for a total of thirty-three years * * *." Tr. at 1229. Defendant claims that the court failed to state the necessary findings and reasons for giving the maximum and consecutive sentences as required by statute. Before it can reverse the sentencing decision of the trial court, this court must find that the trial court has erred by clear and convincing evidence. State v. Gonzalez (Mar. 15, 2001), Cuyahoga App. No. 77338, unreported, 2001 Ohio App. LEXIS 1185.
In order to impose the maximum sentence on a defendant, the trial court must make the findings found in R.C. 2929.14(C), which states:
 Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.
Additionally, when imposing the maximum sentence, the trial court must fulfill the requirements of 2929.19 (B)(2)(e), which states:
 (e) If the sentence is for two or more offenses arising out of a single incident and it imposes a prison term for those offenses that is the maximum prison term allowed for the offense of the highest degree by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum prison term.
At the sentencing hearing, the trial court stated that defendant "is a sociopath borderline psychopath individual who is in [sic] extreme danger to this community." Tr. at 1227. The court also noted that
 [t]his will be the first individual that I sentence in the millennium to the maximum sentence, but the danger that he poses to the community, the likelihood of repetition, is so great of repeat violent acts, of repeat violent offender, that this Court's duty is to sentence him to the maximum consecutive sentences. It would be an affront to the community, to the statute, it would demean and diminish all aspects of the law not to, and the Court will fulfill its duty * * *.
Tr. at 1228-1229.
The court fulfilled the requirement of R.C. 2929.14(C) by finding that the defendant posed a great likelihood of repetition of crime, i.e.,
recidivism. The court also stated its reason for giving the maximum sentence: "[i]t would be an affront to the community * * * [and] would demean and diminish all aspects of the law not to" give the maximum consecutive sentence. Tr. at 1229. The trial court therefore has fulfilled the statutory requirements in giving the defendant the maximum sentence.
Defendant also complains that the trial court failed to make the necessary findings and give the required reasons when it sentenced him to consecutive sentences. When the court imposes consecutive sentences, it must look to R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2)(c).
R.C. 2929.19(B)(2)(c) states:
 (c) If it imposes consecutive sentences under section 2929.14 of the Revised Code, its reasons for imposing the consecutive sentences * * *.
R.C. 2929.14(E)(4) states:
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
When sentencing the defendant, the court found that he posed a danger to the community and was very likely to commit further violent acts. The first prong of the three-part test was therefore fulfilled: the sentence was imposed to protect the public from future harm.
The next prong has two requirements. First, the court must find that the sentence is not disproportionate to the seriousness of the offender's conduct. Earlier in the sentencing hearing, the court stated that the offender put "people's lives at risk and [defendant didn't] care about it." Tr. at 1223. The court told the defendant, "you're a totally callous individual with no concern for any other human life except your own."Id. The court did not, however, state that when it imposed the consecutive sentences that they were not disproportionate to the offense. Although he stated that not to impose consecutive sentences "would be an affront to the community, to the statute, it would demean and diminish all aspects of the law not to * * *." Id. He made these comments when discussing potential future crimes of defendant, not when discussing the crime for which defendant was being sentenced. The court failed, therefore, to make the requisite finding that consecutive sentences were not disproportionate to the seriousness of the offense.
Because the trial court failed to find that consecutive sentences were not disproportionate to the offense, this case must be remanded for resentencing.
Defendant also states four supplemental assignments of error. For his first supplemental assignment of error, he states:
 I. JOHN MOORE WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL WHEN THE TRIAL COURT TOOK NO ACTION FOLLOWING MR. MOORE'S ALLEGATIONS THAT A POLICE OFFICER WAS SIGNALING DESIRED RESPONSES TO A STATE'S WITNESS.
After dismissing the jury following the state's witness's testimony, the court addressed the defendant:
 Mr. Moore, we had some actions here which suggest you are trying to control the manner in which this court is run. If you want to communicate to your attorney — at the conclusion of every witness, he talks to you. You can't interrupt to tell him what to do, get over there. That is highly disrespectful to your attorney, number one. It is disruptive of the court proceedings and you're not running the show here, Mr. Moore.
Tr. at 502. Defendant's attorney tried to explain defendant's behavior to the court, stating that defendant was trying to notify him that "[s]omeone at the State's table was shaking their head while I was asking the witness a question. And that's why he was upset because someone here was giving a signal or doing some gesture." Id. at 503. When the court responded, "I don't know if that happened. I didn't observe that. If that happens, you can approach the court and ask that it be stopped. The defendant isn't in that position." The attorney explained, "[h]e saw I didn't see it and he called me over so I would take note of it." Id.
Defendant now argues that the witness coaching in question was detrimental to his case. The witness in question was asked if she had seen a picture of the defendant on television, to which she replied no. Defendant claims that the detective at the trial table was shaking his head no when she was asked this question. Defendant states that her identification of him is seminal to his conviction and that if she had seen his picture on television, her identification of him might be tainted.
Unfortunately, the defense was not able to bring this alleged witness coaching to the court's attention until after the completion of testimony. The court stated that it did not observe any coaching, which leaves a situation of the court's word against the defendant's.
If the court is made aware of alleged coaching, it should caution the party doing the coaching or move the party out of the witness's line of sight. State v. Glass (Jan 15, 1981), Cuyahoga App. No. 42392; 42203, unreported, 1981 Ohio App. LEXIS 11598; State v. Washington (Aug. 17, 2001), Hamilton App. No. C-000754, unreported, 2001 Ohio App. LEXIS 3604.
"It is well-settled law that a reviewing court may not reverse a trial court's rulings as to the examination of witnesses and the conduct of counsel absent a showing of abuse of discretion. * * * Further, any error in the handling of an alleged coaching of a witness requires a showing of prejudice in order to constitute reversible error." State v. Barton (Feb. 14, 1992), Lucas App. No. L-90-344, unreported, 1992 Ohio App. LEXIS 552, at *5. Thus the defendant must "provide some evidence either that the misconduct was `so egregious and inimical to the concept of a fair trial' that it could not be disregarded within the trial judge's discretion * * * or that the coaching was actually the primary source of testimony that had a reasonable probability of affecting the trial result." State v. Linehan (Sept. 4, 1998), Montgomery App. No. 16841, unreported, 1998 Ohio App. LEXIS 4134, unreported, at *21, citations omitted.
The witness who was allegedly coached was not the only witness to identify the defendant. Further, the defendant's confession was read into evidence. Although defendant took the stand and recanted his confession, arguing that it was coerced, there was more than adequate evidence for the jury to find beyond a reasonable doubt that defendant was guilty, even without the identification by this particular witness.
The first supplemental assignment of error is overruled.
For his second assignment of error, defendant states:
 II. JOHN MOORE WAS DENIED HIS SIXTH AMENDMENT RIGHT TO CONFRONT THE WITNESSES AGAINST HIM, WHEN A POLICE OFFICER INTRODUCED HEARSAY EVIDENCE BY READING FROM A POLICE REPORT.
Defendant argues that much of the testimony of one of the detectives is hearsay because the detective read from statements of the co-defendants. The defense made no objection to this testimony, so the review is under the plain error standard.
Defendant particularly objected to the use of the statement of the co-defendant who actually performed the robbery inside the Hard Rock Cafe. The state counters that because this co-defendant refused to testify, pleading the Fifth Amendment, he was unavailable and therefore his "statement was permissible because it was a statement against penal interest and therefore a recognized exception to the hearsay rule." Appellee's supplemental brief at 3.
Evid.R. 804(B)(3) states:
 The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
* * *
 A statement that was at the time of its making so far contrary to the declarant's * * * interest, or so far tended to subject the declarant to civil or criminal liability * * * that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
The Ohio Supreme Court adopted the ruling of the United States Supreme Court in Lilly v. Virginia (1999), 527 U.S. 119 in State v. Madgrigal
(2000), 87 Ohio St.3d 378, noting the Court's holding that such statements are considered unreliable unless "they exhibit a guarantee of trustworthiness or indicia of reliability." Madrigal at 386. Further, this reliability and trustworthiness cannot come from corroborating evidence presented at trial; rather, [t]he circumstantial guarantees of trustworthiness are those that exist at the time the statement was made and do not include those that may be added using hindsight." Id. at 387, citations omitted.
If the hearsay statement does not have the requisite trustworthiness, then "the final inquiry is whether the Sixth Amendment error was `harmless beyond a reasonable doubt.' This inquiry is not simply a sufficiency of the remaining evidence inquiry; rather, the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Id. at 388, citations omitted.
The detective's complained of testimony also showed that most of the information received by the co-defendant declarant was unreliable. The detective stated that they followed a number of leads given to them by the declarant, all of which proved to be useless. Certainly any statement made by the declarant at this time cannot be given an indicia of reliability.
Because the statement admitted was not admissible under the hearsay exception, we must examine whether its admission "might have contributed to the conviction." Madrigal at 388. Much of the complained of testimony was confusing and merely served to demonstrate the fact that the declarant refused to tell the truth or help the police. The fact that the declarant saw a picture of defendant and stated, "that's Bunkie" does not implicate defendant, when copious evidence showed that defendant had not gone by the alias of "Bunkie" and that a search of the police computers did not reveal defendant's identity under this alias. The declarant who identified defendant as Bunkie also told the police to search for him in two neighborhoods which defendant did not frequent.
The declarant's statements, although inadmissible hearsay, cannot be said to have contributed to defendant's conviction. In fact, the red herrings thrown out by the declarant would more likely have led the police away from, rather than toward, defendant.
The second supplemental assignment of error is overruled.
For his third supplemental assignment of error, defendant states,
 III. JOHN MOORE WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN THE TRIAL COURT REFUSED TO GRANT A REASONABLE CONTINUANCE, SO THAT COUNSEL COULD PREPARE ADEQUATELY FOR THE TRIAL.
Two days prior to the beginning of defendant's trial, the transcript of one of his co-defendants became available. Defendant moved for a continuance of trial to allow his counsel to review the transcript for inconsistent statements made by witnesses in both trials. The court refused to grant the continuance, and defendant now argues that his defense was prejudiced by this refusal.
"The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there had been an abuse of discretion." State v. Unger (1981), 67 Ohio St.2d 65, 67. Determining whether a denial of a continuance is arbitrary is dependant on the circumstances of each individual case. Id. The court has the right to weigh the needs of its own docket against the potential prejudice to which defendant may be exposed. Id.
Several factors must be examined in determining whether a grant of a continuance is required:
 The length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending upon the unique facts of each case.
Unger at 67-68.
The only reasons given for the motion for continuance were, "[t]ranscripts were received by defendant's counsel late afternoon September 8, 2000. A thorough review of these transcripts, prior to commencement of trial, is essential to the effective representation of the defendant." Defendant's motion also mentions a fingerprint match of the defendant, but that issue was not argued at trial.
Applying the Unger criteria, we note that defendant did not state a time period requested in his motion. The record does not reflect any previous requests for continuance, and as defendant pointed out in his appellate brief, all the witnesses were needed to testify in subsequent trials of co-defendants, and would not be inconvenienced by a continuance. The reason for requesting the delay appears to be sincere; however, as the state pointed out in its appellate brief, counsel had two days and following evenings to review the testimony of witnesses who would be appearing before him at defendant's trial.
Given that the trial court's schedule is set well in advance and the court had undoubtedly set aside a significant block of time for this trial, and given that the transcript of a co-defendant's trial would not have been available to defendant but for the vagaries of scheduling which placed the co-defendant's trial first, we do not find error in the trial court's denial of defendant's motion for continuance.
The third supplemental assignment of error is overruled.
For his fourth supplemental assignment of error, defendant states,
 IV. JOHN MOORE WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, WHEN COUNSEL BOTH FAILED TO FILE AN AFFIDAVIT OF PREJUDICE AGAINST THE JUDGE PRESIDING OVER HIS TRIAL WITH THE CUYAHOGA COUNTY COURT OF COMMON PLEAS AND WHEN COUNSEL FAILED TO PRESERVE THE RECORD AND DENIED MR. MOORE OF AN OTHERWISE VALID APPELLATE ISSUE.
The same trial judge had presided over at least one trial of a co-defendant in this robbery. In the former trial, the court had had to admonish defendant concerning his behavior on the witness stand. Also, when ruling on defendant's Crim.R. 16 motion, the court referenced the fact that he was familiar with the evidence "[b]ecause I've seen the police reports in the last trial and I know." Tr. at 493. At that point defense counsel stated that the judge "shouldn't be sitting on this case if you heard this stuff from the last trial." Id. The judge then denied that his familiarity with the case was affecting him in the case at bar. No further discussion was had concerning the propriety of the judge presiding.
Defendant now argues that his counsel should have filed an affidavit of disqualification of the judge. Counsel had filed a motion for recusal, but did not file a subsequent affidavit when the motion was denied.
"R.C. 2701.03 allows a party to file an affidavit of disqualification with [the Ohio Supreme Court] when a common pleas judge is allegedly biased against a party or counsel." State v. Getsy (1998),84 Ohio St.3d 180, 185. Additionally,
 [a] judge need not recuse himself simply because he acquired knowledge of the facts during a prior proceeding. * * * Even if [the trial judge] formed an opinion of Espinoza's veracity based on his earlier testimony at Keenan's trial, such an opinion does not disqualify the judge from this case. `[W]hat a judge learns in his judicial capacity — whether by way of guilty pleas of codefendants or alleged coconspirators, or by way of pretrial proceedings, or both — is a proper basis for judicial observations, and the use of such information is not the kind of matter that results in disqualification.' * * * Since `evidence presented in the trial of a prior cause * * * do[es] not stem from an extrajudicial source' it creates no personal bias requiring recusal.
State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 188. See, also, State v.Cornwell (1997), 81 Ohio St.3d 1205.
Defendant argues that the trial court "showed instances in which the trial court displayed its anger — even dislike — for" defendant. Supplemental appellate brief at 9. Although the court did display irritation with the defendant, it also showed concern for the fairness of defendant's trial, as exhibited by several side bar discussions with counsel. Further, the instances in which the court was irritated with defendant occurred when defendant disrupted the court.
Defendant also claims that the court displayed dislike for the defendant. This is a subjective impression, and does not take into consideration the individual manners of expression of those who occupy the bench. In sum, defendant fails to demonstrate that because it conducted the trial of a co-defendant, the court was not able to be objective and fair in his trial.
The fourth assignment of error is overruled.
The judgment of conviction is affirmed. The imposition of consecutive sentences is reversed and remanded for resentencing.
Conviction affirmed; reversed and remanded for proceedings consistent with the opinion herein.
It is, therefore, ordered that appellant recover from appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J. and TERRENCE O'DONNELL, J., CONCUR.
[1] The note states, "Your Honor, John Moore would like to go on record to preserve right to call back any or all witnesses called by Prosecutor. I have many, many Q's that I presented to my lawyer to ask but did not. I also want Fred King and all co-defendants called if prosecutor doesn't. I also ask that Det. Moran be kept out of court since he'll be called as a witness."
[2] The letter from defendant stated:
CR392440 CA 78751
Your Honor,
 I feel that a lot of my Q's would have promoted facts to defense of being coerced into making a false confession/statement. A lot of relevant information which could contrast with the states (sic) position are not being brought out due to the Q's not being asked ormy line of Qing not being followed through to the end.
 I believe by asking former witnesses, the fact that a lot of information can be brought to light thru asking the revelavant [sic] Q. Q's to ascertain state of mind of witnesses, intent of witness's and the igsistance [sic] of a concerted effort on the police behalf to hid [sic] facts and distort truth's [sic]. I have given numerous lead's [sic] for Mr. Tobik to follow-up on but none were done in a timely fashion to be used in my defense.
 As for closing Arguements [sic] if you will give me the perameters [sic] [boundries] by which I have to limit my resessatations [sic] statements of fact I'm sure with a reasonable amount of time (48 hrs.) I could write a full assessment of my strategy as well as the means to deliver it to the jury. In closing I have tried to comply with all orders of the court and only wish to get both the truth (in full) and my version of events related to the jury before deliberations commence. I feel that I am in a position to watch but not participate, to witness but not contribute even though I have firsthand knowledge ofen time [sic] procedings [sic]. I'm if I may put it in example. [sic] Being expected to fight a championship boxer in a title fight with my left hand tied my right broken. I could still fight but the chances of success is [sic] zero to none.
 I would like to assist Bob Tobik to the best of my abilities and on important matters of strategy fact toward witnesses evidence. But if my contributions will be continueously [sic] ignored then I would ask that you allow him to assist me in continueing [sic] my defense. If that can not be accomplished, I ask that you recall past witneses and they be asked Q's I deem relevant and future witnesses evidence be reviewed to help better form defense. If none of the before mentioned requests can be granted I ask that you read this entire document into the record and you allow me to proceed pro-se [sic] after a reasonable continuance (48 hrs) for sole purpose of reviewing documents in Prosecutor's control and to formulate a full encompassing strategy to write both closing arguement [sic] and formulate Q's to be asked to me when I take [the] witness stand in my defense. This time will also be used to familiarize myself with the rules, protocols, and procedures of trial. My final request is that this document not be scrutinized by prosecution until such time as I am prepared to act in my own defense. I apologize for any inappropriate behavior in the courtroom and will continue to conduct myself in a respectful manner for the duration of trial.
Thank you
 John C. Moore Sept. 14, 2000 1:00 p.m. Thursday Written on direction of judge Honorable Timothy McGinty.
P.S. on pg. # 3
 I also request that I be allowed to apologize to [the] jury and they be made fully aware of why the earlier incident took place and the resolution [was] decided and why. Sincerely
John C. Moore
P.S. II
 This should in no way reflect negatively on Mr. Robert Tobik who I hold in high regard and respect immensely. I just feel my defense should be handled a little differently and since the eventual outcome will impact me the most that I should have input into strategy 
decision making [it] part of my defense.