[Cite as *State v. Michalos*, 2018-Ohio-4801.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

ASHTABULA COUNTY, OHIO


| STATE OF OHIO, | : | **O P I N I O N** |
|---|---|---|
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO.  2017-A-0071** |
| CHARLES A. MICHALOS, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal from the Conneaut Municipal Court, Case No. 2017 CRB 0058 A.

Judgment: Affirmed.


*Kyle B. Smith*, Conneaut Law Director, and *Christopher M. Newcomb*, Assistant Conneaut Law Director, 294 Main Street, Conneaut, OH 44030 (For Plaintiff-Appellee).

*Michelle M. French*, Law Offices of Michelle M. French, LLC, 28 West Jefferson Street, Jefferson, OH 44047 (For Defendant-Appellant).


TIMOTHY P. CANNON, J.

{¶1}   Appellant, Charles A. Michalos, appeals from the judgment entry of conviction and sentence issued by the Conneaut Municipal Court on September 5, 2017. The judgment is affirmed.

{¶2}   On January 27, 2017, appellant was charged via complaint with one count of Aggravated Disorderly Conduct and one count of Disturbing a Lawful Public Meeting, fourth-degree misdemeanors in violation of R.C. 2917.11(A)(2) and R.C. 2917.12(A)(2). The charges stem from a January 23, 2017 city of Conneaut council meeting.  The

complaints allege appellant yelled insults at city council members, yelled "shut up" to city council members and audience members, and persisted with this behavior even after requests to desist were made by city council members and Conneaut Police Officers.

{¶3} A jury trial was held on July 20, 2017. Appellant was found guilty of Aggravated Disorderly Conduct and not guilty of Disturbing a Lawful Public Meeting.

{¶4} Appellant was sentenced to 30 days in jail and fined $150.00, with the entire fine and 28 days suspended, and a term of three years supervised community control. The conditions of his community control include completing a mental health evaluation and following the recommendations, and not attending city council meetings or having any contact with city hall other than for personal or probationary purposes. The trial court granted appellant's oral request to stay the sentence pending appeal.

{¶5} Appellant raises two assignments of error on appeal:

[1.] The trial court erred to the prejudice of the defendant by failing to grant his Rule 29 motion for acquittal; furthermore, the jury's verdict was against the manifest weight of the evidence.

[2.] The trial court erred when it failed to address appellant's concerns about his appointed counsel's performance by inquiring of the indigent defendant regarding his in-trial comments about his counsel.

{¶6} Under his first assignment of error, appellant argues the trial court erred by denying his Crim.R. 29(A) motion for judgment of acquittal. Alternatively, he asserts the jury's verdict was against the manifest weight of the evidence.

{¶7} Crim.R. 29(A) requires the trial court to grant a motion for judgment of acquittal if the evidence is insufficient to sustain a conviction on the charged offense(s). "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the

sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 & 2003-T-0167, 2004-Ohio-6688, ¶18.

{¶8} When reviewing whether sufficient evidence was presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979). Thus, a claim of insufficient evidence invokes a question of due process, the resolution of which does not allow for a weighing of the evidence. *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *4 (Dec. 23, 1994), citing *State v. Davis*, 49 Ohio App.3d 109, 113 (8th Dist.1988), citing *Jackson*, *supra*, at 319.

{¶9} To determine whether a verdict is against the manifest weight of the evidence, on the other hand, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). In weighing the evidence submitted at a criminal trial, an appellate court must defer to the factual findings of the trier of fact regarding the weight to be given the evidence and credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶10} R.C. 2917.11(A)(2), "Disorderly Conduct," provides that "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by * * * [m]aking

3

unreasonable noise or an offensively course utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person[.]" "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶11} To support a conviction of Aggravated Disorderly Conduct, the state was also required to prove one of the aggravating factors listed in R.C. 2917.11(E)(3). The aggravating factor relevant to appellant's conviction is that "[t]he offender persist[ed] in disorderly conduct after reasonable warning or request to desist." R.C. 2917.11(E)(3)(a).

{¶12} Appellant submits that, although the language he used was impolite and uncooperative, it did not rise to the standard necessary for a conviction of Disorderly Conduct. He further submits there is no indication he was ordered to stop this behavior and yet continued in the behavior, which is necessary to support his conviction of Aggravated Disorderly Conduct.

{¶13} Defense counsel stipulated to three exhibits introduced by appellee, the state of Ohio: (1) the recording of the January 23, 2017 city council meeting; (2) a copy of the agenda from the meeting; and (3) the body cam video of one of the arresting officers.

{¶14} The recording of the meeting reveals that appellant began by reading from a prepared statement, stating: "So our Democratic council and school board need money—there's a shocker." He then made comments about a former council member, Dino Julio, and certain street light fees that had been generated over the previous seven years and engaged in what he referred to as "simple math." Appellant then stated: "Which

4

begs the question, what did Dino Julio's council do with the unreported $50,000.00, or more importantly, the $350,000.00 over the last seven years?  Did they split it four ways?  That would be $12,500.00 a year for four councilmen.  After all, it only takes four councilmen for a majority vote to pass, and as fate would have it, the majority of council is Democrats.  Why would they lie about - -"  At that time, City Council President, Nicholas Church, banged his gavel and said appellant's name.  Appellant forcefully told him to "shut up."  Mr. Church said, "pardon me?" to which appellant replied, "I said, 'shut up.'  People need to learn this."  Mr. Church instructed someone to "push the button" and told appellant his time was up; appellant responded, "no, it is not."  Appellant can then be heard calling Mr. Church a name.  Appellant continued to yell "shut up" multiple times as Mr. Church told appellant he was done and called for a recess of the meeting.  Mr. Church ordered the cameras be turned off.  Appellant continued to speak, and Mr. Church ordered the microphones be turned off.

{¶15}  Mr. Church testified he used the gavel because appellant was insinuating that city council was stealing the money, although he did not hear appellant explicitly use the words "steal" or "thief."  He testified that the street light issue was not on the agenda, but he would have permitted appellant to continue to speak had he not "crossed the line" with the insinuation that city council members were stealing money.  After using the gavel, Mr. Church stated he tried to speak to appellant, but was interrupted by appellant saying, "shut up."  Mr. Church told appellant he was out of order and was done talking.  Appellant continued to tell Mr. Church to "shut up" and call people names.  At that time, Mr. Church told the city manager to push the "panic button," which summoned police officers located in the building, because he felt appellant was out of control.

5

{¶16} Mr. Church testified he requested the cameras be turned off because he did not want appellant to "have an audience" for his behavior. After the recording ended, according to Mr. Church, appellant "continued on" until the police arrived, calling people names from his chair and telling them to "shut up." He testified that three officers responded and asked appellant to leave several times, but appellant refused, stating he had a right to be there. This is verified in the body cam recording of the arresting officers. Appellant was arrested and removed from the meeting. Mr. Church testified that the meeting was delayed by approximately 20 to 30 minutes.

{¶17} Three other witnesses, identified below, testified that appellant told Mr. Church to "shut up" several times, even after being told to stop speaking, and that appellant caused a disruption and delay to the meeting.

{¶18} Katherine Frank, an audience member, testified that appellant was making "very derogatory" statements towards the councilmen and that he became more "erratic" and "physical" in his behavior after the recording ended. Mrs. Frank further testified that she made a comment to appellant on the recording. The recording reveals she told appellant "no one else wants to hear you, either," to which he responded, "I don't care."

{¶19} Jon Arcaro, Conneaut councilman-at-large, testified that appellant was on a "tangent," making accusations, calling people names, and ordering Mr. Church to "shut up." He indicated that he heard appellant use the words "steal" and "thief" when referring to council members. Mr. Arcaro further testified that he told appellant he had a right to speak, but he could not be disorderly and threatening; he told appellant to "cease being disorderly," but appellant "didn't want to listen to any reason."

6

**{¶20}** James Hockaday, the city manager, testified that appellant was calling council members "liars" and "thieves" and that, after the recording ended, appellant continued to tell people to "shut up" and referred to Mr. Church as a "big slab of stupid." Mr. Hockaday also testified that appellant pointed his finger in Mrs. Frank's face and told her to "shut up." Mr. Hockaday stated Mr. Church told him to push the "panic button," which he believed was appropriate because appellant's behavior was out of line, threatening, and aggressive towards others, including other members of the audience.

**{¶21}** Officer Timothy Rose testified as to appellant's behavior upon the officers' arrival. He stated appellant grabbed his own wrists, sunk himself deeper into the chair, and refused to leave upon their multiple requests to do so. Officer Rose testified the goal was to remove appellant from the room on his own power, but appellant passively resisted and let his body go limp, which resulted in appellant's arrest on the ground.

**{¶22}** Viewing the evidence outlined above most strongly in favor of the prosecution, we hold the testimony of the five witnesses and the recordings provided sufficient evidence of appellant's disorderly conduct, which persisted after being ordered to desist. Any rational jury could have found the elements of Aggravated Disorderly Conduct, in violation of R.C. 2917.11(A)(2) and (E)(3)(a), proven beyond a reasonable doubt. There was evidence presented from which the jury could have found that appellant recklessly made an "offensively course utterance, gesture, or display" that caused "inconvenience, annoyance, or alarm" and that he persisted in doing so after a "reasonable warning or request to desist." The trial court did not err in denying appellant's Crim.R. 29(A) motion for judgment of acquittal.

{¶23} Further, based on the evidence outlined above, we do not conclude that appellant's conviction of Aggravated Disorderly Conduct was against the manifest weight of the evidence. Under the circumstances of a public meeting, the jury did not lose its way or create a manifest miscarriage of justice by finding appellant's behavior, which was largely directed at the councilman attempting to keep order of that meeting, amounted to Aggravated Disorderly Conduct.

{¶24} Appellant's first assignment of error is without merit.

{¶25} Under his second assignment of error, appellant argues the trial court did not make an adequate inquiry into his concerns about his trial counsel as required under *State v. Deal*, 17 Ohio St.2d 17 (1969). Appellant submits the trial court did not inquire, in any way, into appellant's concerns about his appointed counsel's performance.

{¶26} "Where, during the course of his trial for a serious crime, an indigent accused questions the effectiveness and adequacy of assigned counsel, * * * it is the duty of the trial judge to inquire into the complaint and make such inquiry a part of the record." *Deal*, *supra*, at syllabus. The inquiry may be brief and minimal, and the duty to inquire is only triggered by allegations that are sufficiently specific. *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, ¶139, citing *State v. King*, 104 Ohio App.3d 434, 437 (4th Dist.1995) & *State v. Prater*, 71 Ohio App.3d 78, 82 (10th Dist.1990); *State v. Carter*, 128 Ohio App.3d 419, 423 (4th Dist.1998), citing *Deal*, *supra*, at 19 ("vague or general objections do not trigger the duty to investigate further"). "The trial judge may then require the trial to proceed with assigned counsel participating if the complaint is not substantiated or is unreasonable." *Deal*, *supra*, at syllabus.

{¶27} Appellant's argument is distinguishable from that in *Deal*. In *Deal*, the defendant was very specific in his attack on trial counsel; he informed the court that his counsel failed to present his alibi defense and also refused to subpoena witnesses who were detrimental to his defense. *Id.* at 18. The trial court, however, did not inquire into counsel's actions regarding the defendant's accusations. *Id.* at 19.

{¶28} Here, appellant takes issue with the following exchange between himself and the trial court, which occurred during trial.

> THE COURT: We're back on the record. I want to address a couple of items. I've already addressed one, Mr. Shiflet, with respect to your client's conduct. And for the record, I wanted to reflect that he has still persisted, since my last admonition, to move about and whisper loudly and express, with facial gestures, dissatisfaction with whatever—I don't know what—but that my patience is running thin on this. And I intend, if need be, to have Mr. Michalos removed from the courtroom. I don't want to do that. I only had to do that once before, and that was with a hardened criminal.
>
> MR. MICHALOS: He's not—
>
> THE COURT: And I don't want to argue with you. I'm just saying.
>
> MR. MICHALOS: He's not familiar with the case.
>
> THE COURT: I'm just saying to you, you cannot do what you have been doing. You don't see anybody else in this room doing this.
>
> MR. MICHALOS: This man is not familiar with the case.
>
> THE COURT: Enough said on that issue.

{¶29} Appellant did not initiate this conversation with the trial court nor does the exchange reveal any specific complaints regarding trial counsel's inadequacies. Rather, appellant's response is merely an attempt to excuse his unacceptable courtroom behavior for which he was being admonished. The vague and general accusation that counsel

9

was not "familiar" with his case, in this context, did not trigger the trial court's duty under *Deal* to inquire or investigate further.

{¶30} Appellant's second assignment of error is without merit.

{¶31} The judgment of the Conneaut Municipal Court is affirmed.


CYNTHIA WESTCOTT RICE, J., concurs,

THOMAS R. WRIGHT, P.J., concurs in judgment only.