JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Willie Johnson, appeals the decision of the Cuyahoga County Common Pleas Court that convicted and sentenced him for rape, gross sexual imposition and intimidation following a jury trial for these offenses. For the reasons that follow, we affirm.
 {¶ 2} The record reveals that a fifty-five count indictment was returned against appellant charging him with (1) 17 counts of rape of a victim under the age of 13 years, in violation of R.C. 2907.02; (2) 10 counts of rape, in violation of R.C. 2907.02; (3) 26 counts of gross sexual imposition, in violation of R.C. 2907.05; and (4) two counts of intimidation, in violation of R.C. 2921.04. It was alleged in the indictment that these offenses were against two victims, each of whom were 13 and 11 years of age at the time of trial and will be referred to as Victim I and Victim II respectively. It was further alleged that these offenses occurred over a two-year time span, from June 1999 through June 2001. It appears from the record that appellant was the boyfriend of the victims' mother and had resided with the family for approximately thirteen years prior to the indictment.
 {¶ 3} The case proceeded to trial and several counts were dismissed by the court upon appellant's motion for acquittal following the close of the state's case. What remained for consideration by the jury were (1) two counts of rape of a victim under the age of 13 years involving Victim I; (2) nine counts of rape involving Victim I; (3) eight counts of gross sexual imposition, two of which were against Victim I and six of which were against Victim II; and (4) one count of intimidation. The jury found appellant guilty on all of these remaining counts. The court ultimately sentenced appellant to consecutive prison terms of life without parole on the two counts of rape of a victim under the age of 13 years. Of those counts remaining, appellant was sentenced to (1) ten-year terms of imprisonment on nine counts of rape; (2) one-year terms on eight counts of gross sexual imposition; and (3) a one-year term on one count of intimidation. Each term was to run concurrent to the consecutive life terms already imposed.[1]
 {¶ 4} Appellant is now before this court and assigns 17 errors for our review.
 I. Right to Counsel
A. Appointment of Counsel
 {¶ 5} In his first assignment of error, appellant contends that he was constructively denied the right to counsel when the trial court appointed counsel close to the date of trial.
 {¶ 6} The record reveals that the trial court found appellant to be indigent at his arraignment on August 7, 2001 and appointed counsel to represent him. That counsel withdrew with the permission of the court on August 15, 2001 and the Public Defender's Office was contemporaneously appointed as appellant's legal representative. Trial commenced on August 30, 2001, at which time the court acknowledged that appellant's trial counsel had the case "no longer than seventeen days." The trial court judge specifically inquired of appellant if he wanted to go forward with trial on this date, stating:
 {¶ 7} "Mr. Johnson, do you want to go forward with your trial today? Your lawyer's had this case seventeen days. The maximum penalty provided under twenty-some counts here is life imprisonment, fifteen years to life imprisonment. He has told me repeatedly that you wish to go forward. That's why I'm here. That's why I told everybody to be here to try this case."
 {¶ 8} After answering affirmatively, the trial court judge again inquired of appellant if he wanted to go forward stating that "time is running the case," referring to the speedy trial time restriction. Appellant again answered affirmatively. The trial court judge then stated:
 {¶ 9} "I would continue the case today at your request if you requested such, to get your attorney more involved in the facts of the case. But, without your request to do so, I will not do it. You want to go forward then?"
 {¶ 10} Appellant again answered affirmatively, stating further that "because from what I see, you know, it still is going to be just me."
 {¶ 11} Thereafter, the trial judge realized he misstated the current law on the amount of prison time appellant could receive for these charges. Correcting himself, the judge again inquired of appellant if he wanted to go forward with trial and appellant again answered affirmatively.
 {¶ 12} As is demonstrated from the above colloquy, appellant was asked on several occasions if he wanted to go forward. Appellant repeatedly states in his brief before this court that his trial counsel did not "feel prepared" or was "admittedly ill prepared." This is untrue. Not only did appellant never voice any hesitancy with appointed counsel, appointed counsel did not indicate or otherwise demonstrate to the court that counsel was unprepared to go forward. On the contrary, when inquired by the court, counsel stated that he was prepared to go forward.
 {¶ 13} While it is true that a court's decision to appoint counsel on the day of trial has been found to be prejudicial error, that is not the case here. Compare Hunt v. Mitchell (C.A.6, 2001), 261 F.3d 575. We see no error.
 {¶ 14} Appellant's first assignment of error is not well taken and is overruled.
B. Request for Removal of Counsel
 {¶ 15} In his second assignment of error, appellant contends that he was denied due process of law when the trial court failed to make an adequate inquiry regarding his request to replace his appointed counsel with counsel of his own choosing.
 {¶ 16} We note at the outset that, contrary to appellant's representations, appellant's request was for a continuance, not a request for his counsel to withdraw. Notwithstanding, we note that if a criminal defendant has demonstrated "good cause, such as a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict," then a trial court's failure to honor a timely request for new counsel would constitute a denial of effective assistance of counsel. State v.Blankenship (1995), 102 Ohio App.3d 534, 558; State v. Carter (1998),128 Ohio App.3d 419, 423. In all other cases, a trial court's decision denying a motion for a continuance to retain new counsel is governed by an abuse of discretion standard. State v. McNeill (1998),83 Ohio St.3d 438, 452.
 {¶ 17} Appellant relies on this court's decision in State v.Beranek (Dec. 14, 2000), Cuyahoga App. No. 76260, 2000 Ohio App. Lexis 5868, for the proposition that a trial court commits reversible error when it does not inquire of an indigent criminal defendant as to that defendant's reasons for requesting a change of counsel. In that case, the defendant had requested that his trial counsel withdraw and trial counsel thereafter made an oral motion prior to voir dire to be removed. Finding the motion not only untimely but not written, the court denied the motion.
 {¶ 18} The Beranek court, relying on State v. Prater (1990),71 Ohio App.3d 78, found that a trial court has a duty to investigate the reasons behind the defendant's request for a change of counsel, however brief or minimal, once that defendant asserts allegations specific enough to justify further investigation. Id. at 12. Notwithstanding that there were no specific allegations made by the defendant in Beranek, the court stated that it would "not penalize Beranek for failing to press the issue before the [court] when the [court] made it clear that [it] would not consider Beranek's complaints and did not inquire into their nature."
 {¶ 19} In this case, the record reveals that the state's first witness, the victims' mother, had finished testifying when the state called Victim I as its second witness. After the court had inquired as to this victim's age and ability to testify truthfully and before the state began its direct examination, appellant's counsel interrupted, stating:
 {¶ 20} "[APPELLANT'S COUNSEL]: Okay, what I'm doing is making an oral request for a continuance. I spoke with the [appellant] over the weekend. He says his sister was in the process of trying to hire an attorney to take over the case. And, I just want to bring that to the Court's attention.
 {¶ 21} "THE COURT: He wants it continued to hire a lawyer.
 {¶ 22} "THE PROSECUTOR: We would object. We're ready to go forward.
 {¶ 23} "THE COURT: Motion overruled."
 {¶ 24} During sentencing, appellant stated:
 {¶ 25} "I still say that I'm innocent, and I want it on the record that I tried to dismiss my attorney, and he said that you disallowed it, even though there was no stenographer over there, he said that you disallowed it."
 {¶ 26} Trial counsel thereafter explained to the court:
 {¶ 27} "Just for clarification, Your Honor, with respect to the statement just made, he did ask me to approach the Court to try to get new counsel appointed on the case, and I explained to him that one of the problems was there was a time problem with respect to this case, and I asked would he be willing to sign a waiver to extend the time, and of course, he wasn't willing to do that, which is part of the reason why the Court decided that new counsel would not be appointed to the case."
 {¶ 28} Appellant maintains that this exchange "obviously" supports his early dissatisfaction with his appointed counsel, which triggered the court's duty to inquire. We disagree.
 {¶ 29} Assuming without deciding that Beranek appropriately states the law on this issue, nothing in the record before us leads this panel to conclude that appellant questioned the adequacy of his appointed counsel. Certainly in the harsh light of hindsight, appellant may feel justified in finding his trial counsel inadequate because of an unfavorable verdict. While there may have been a discussion between appellant and his trial counsel on this issue, there is nothing in the record before us that supports appellant's argument that he alleged with sufficient specificity that he was unhappy with his counsel during the course of the trial so as to trigger any duty on the part of the trial court to make further inquiry. Unlike Beranek, moreover, we see nothing in the record to support that appellant was absolved of making specific allegations because to do so would have been a vain act. Consequently, we see no error in the trial court's decision to deny appellant a continuance.
 {¶ 30} Appellant's second assignment of error is not well taken and is overruled.
 II. Admission of Evidence
A. Dr. Feingold's Testimony as to Medical Diagnosis
 {¶ 31} In his third assignment of error, appellant contends that he was denied due process of law when the trial court permitted physician, Mark Feingold, M.D., to testify as to statements made by Victim I.
 {¶ 32} Generally, a trial court has broad discretion in determining the admissibility of evidence, so long as it exercises that discretion "in line with the rules of procedure and evidence." Rigby v.Lake Cty. (1991), 58 Ohio St.3d 269, 271. Hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Unless a valid exception applies, hearsay is inadmissible. Evid.R. 802.
 {¶ 33} Evid.R. 803(4) excepts from the general hearsay rule "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." In order for the out-of-court statements to fall within this hearsay exception, however, a physician's examination should be for medical diagnosis or treatment and not a subterfuge to gather information against the accused. State v. Vaughn (1995), 106 Ohio App.3d 775, 780. Nonetheless, a child's statement concerning the identity of the abuser may be admissible under Evid.R. 803(4). State v. Dever (1992),64 Ohio St.3d 401, paragraph two of the syllabus; see, also, State v.Storch (1993), 66 Ohio St.3d 280.
 {¶ 34} In this case, Dr. Feingold is a pediatrician affiliated with MetroHealth Medical Center ("MHMC"), where he serves as the Director of Child Protection Service, Child Abuse Service as well as the Director of the Alpha Clinic, which is a facility for the evaluation of sexually abused children. The Cuyahoga County Department of Children and Family Services referred Victim I to Dr. Feingold, who evaluated this victim approximately two weeks after first being seen in the MHMC emergency room. His testimony detailed the victim's history as well as the medical examination he performed. Appellant complains that it is the victim's retelling of the abusive events, including the detail afforded the description of the perpetrator, that supports that the victim did not see Dr. Feingold for the purpose of medical treatment. On the contrary, he argues that the doctor's role was that of an investigator under the guise of a medical practitioner so that the victim's out-of-court statements would be admitted under the medical treatment exception to the hearsay rule. We disagree.
 {¶ 35} The statements attributed to Victim I were made to Dr. Feingold while he was taking this victim's history, a precursor to the physician's physical examination. Dr. Feingold testified that the purpose of obtaining a patient's history is important not only in arriving at a diagnosis but in developing a course of treatment. The statements made by Victim I to Dr. Feingold, therefore, were made for the purpose of medical diagnosis and treatment. Consequently, we see no error in the admission of Dr. Feingold's testimony.
 {¶ 36} Appellant's third assignment of error is not well taken and is overruled.
B. Dr. Feingold's Testimony as to Credibility
 {¶ 37} In his fourth assignment of error, appellant contends that the trial court erred when it permitted Dr. Feingold to testify as to the credibility of Victim I.
 {¶ 38} Ordinarily it is error for an expert to testify as to the veracity of a child declarant's statements. State v. Moreland (1990),50 Ohio St.3d 58. Relying on State v. Boston (1989), 46 Ohio St.3d 108, the Moreland court opined that the veracity and credibility of a child declarant is a matter in the realm of the trier of fact, not the expert. Id. at 62.
 {¶ 39} Contrary to appellant's assertions, however, Dr. Feingold did not testify as to this victim's credibility. The state inquired of the doctor as follows:
 {¶ 40} "THE PROSECUTOR: Okay. After completing your examination of [Victim I], did you conclude to a reasonable degree of medical certainty whether sexual abuse had occurred?
 {¶ 41} "DR. FEINGFOLD: Yes. I did.
 {¶ 42} "THE PROSECUTOR: And what was your conclusion?
 {¶ 43} "DR. FEINGOLD: My conclusion was that there was probable sexual abuse, that that's based on the child having given spontaneous, clear, consistent and detailed description of being abused, whether or not there were physical findings present.
 {¶ 44} "And my final conclusion, after receiving the lab reports and also having reviewed the emergency department records, was the same, with the comment that sexual abuse need not cause physical injury or laboratory changes, and the absence of physical or laboratory changes does not rule out sexual abuse."
 {¶ 45} Continuing at a later point, the doctor testified:
 {¶ 46} "For me medically, probable sexual abuse means just that, that is my diagnosis. I think this girl probably was sexually abused and I would continue or I would encourage further treatment in the form of psychological counseling based on that conclusion."
 {¶ 47} Consequently, Dr. Feingold's testimony relates to his medical diagnosis regarding this victim. That this diagnosis was based, in part, on statements made to him by the victim does not require the conclusion that the doctor is vouching for the veracity of the victim's testimony. It was the manner in which the victim responded during the doctor's examination that led him to make the diagnosis of probable sexual abuse.
 {¶ 48} Appellant's fourth assignment of error is not well taken and is overruled.
C. Videotaped Testimony of Dr. Feingold
 {¶ 49} In his fifth assignment of error, appellant contends that he was denied the constitutional right of confrontation when the trial court permitted the videotaped deposition of Dr. Feingold over his objection.
 {¶ 50} Contrary to appellant's assertions, however, the record does not support any opposition on the part of appellant. The state filed its motion for leave requesting the video deposition of Dr. Feingold on August 24, 2001, five days prior to the start of trial. In its brief in support, the state maintained that the doctor was going to be "out of town and unable to testify at trial." There was no opposition to the motion and the record reveals that the deposition took place on August 27, 2001. Appellant was present with his trial counsel and the deposition proceeded. On the day of trial, the trial court judge stated that Dr. Feingold's deposition was taken by "stipulation of the parties." Just prior to being played for the jury, the trial judge again stated that this deposition was taken "by agreement of the parties." Appellant voiced no objection to either statement. He has, therefore, waived all but plain error. See Crim.R. 52(B).
 {¶ 51} Under this rule, "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Ohio Supreme Court has previously explained that this rule "places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial." First, there must be an error, such as a deviation from a legal rule. Second, the error must be plain, meaning that there must be an `obvious' defect in the trial proceedings. Third, the error must have affected `substantial rights,' which means that "the trial court's error must have affected the outcome of the trial." State v. Barnes (2002),94 Ohio St.3d 21, 27. Thus, an appellate court reviewing a proceeding for plain error must examine the evidence properly admitted at trial and determine whether the jury would have convicted the defendant even if the alleged error had not occurred. State v. Slagle (1992), 65 Ohio St.3d 597,604-605. The decision to correct a plain error, nonetheless, is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at 27, quoting State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 52} Crim.R. 15 governs the procedure for taking the deposition of a prospective witness in a criminal matter. Succinctly, the rule authorizes the deposition if "it appears probable" that the witness is unable to attend a trial and if it further appears that the witness's testimony is "material" and "necessary * * * in order to prevent a failure of justice." Without a finding of unavailability, however, a trial court's decision to admit videotaped deposition testimony affronts the Confrontation Clause of the United States Constitution. Brumley v.Wingard (C.A.6, 2001), 269 F.3d 629. "Thus, the knowing preparation of a videotaped deposition as a substitute for the trial testimony of a constitutionally available witness is inconsistent with the values of the Confrontation Clause, despite reduced concerns with reliability. Id. at 642. Quoting United States v. Mattox (1895), 156 U.S. 237, 242-243, the Brumley court stated:
 {¶ 53} "`The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.'"
 {¶ 54} Nonetheless, Brumley is factually distinguishable in that the witness in Brumley was an eyewitness as opposed to an expert witness as in the instant case. Moreover, not only did appellant's counsel have the opportunity to cross-examine Dr. Feingold but appellant was present as well. It is true that the videotaped testimony prevented Dr. Feingold from facing the jury. Even if we were to find this to affront the Confrontation Clause, we do not see that the outcome of trial would have been different under a plain error analysis, however. Had Dr. Feingold's videotaped testimony been ruled inadmissible, the incriminating testimony of Victim I remains and would have been sufficient for a jury to find appellant guilty of the offenses for which he was charged.
 {¶ 55} Appellant's fifth assignment of error is not well taken and is overruled.
D. Other Bad Acts
 {¶ 56} In his sixth assignment of error, appellant complains that he was denied a fair trial when the trial court admitted evidence of other bad acts.
 {¶ 57} Evidence of a criminal defendant's prior crimes or other bad acts is not admissible to show that the defendant has a disposition or propensity toward the commission of a crime. State v. Hector (1969),19 Ohio St.2d 167, 174; see, also, Evid.R. 404(B). When a witness inadvertently answers a question that references a prior bad act, the trial court's remedy is to enter a curative instruction. State v. Loza
(1994), 71 Ohio St.3d 61, 79.
 {¶ 58} Appellant contends that references to him owning guns and that he had killed someone were highly prejudicial and denied him a fair trial despite the trial court's instruction to the jury that this testimony was improper and should be disregarded. We disagree.
 {¶ 59} A jury is presumed to have followed a court's curative instruction. Id.; see, also, State v. LaMar, 95 Ohio St.3d 181,2002-Ohio-2128. Notwithstanding appellant's reliance on Justice Wright's dissent in State v. DePew (1988), 38 Ohio St.3d 275, 294 wherein it was stated that curative instructions are of little effect and are generally disfavored, we see nothing in the record to suggest that appellant was denied a fair trial because of the testimony at issue or the manner in which the trial court instructed the jury to disregard that testimony.
 {¶ 60} Appellant's sixth assignment of error is not well taken and is overruled.
 III. Jury Instructions
A. Instruction on "Force"
 {¶ 61} In his seventh assignment of error, appellant contends that the trial court erred in instructing the jury on the definition of force. In particular, appellant directs us to the trial court's use of "special meaning of force," which it defined as follows:
 {¶ 62} "This special circumstance relates to force of a parent or other authority figure. When the relationship between the victim and the defendant is one of child and stepfather or stepparent, the element of force need not be openly displayed or physically brutal. It can be subtle, slight and psychologically or emotionally powerful. If you find beyond a reasonable doubt that under the circumstances in evidence, the victim was overcome by fear or duress or intimidation, the elements of force have been proved."
 {¶ 63} Appellant contends that R.C. 2901.01(A) specifically defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing" and that the trial court was without authority to alter or amend that definition when instructing the jury. We note, however, that there were no objections to any of the jury instructions given by the trial court. Appellant has, therefore, waived all but plain error. See Crim.R. 52(B); see, also,State v. Underwood (1983), 3 Ohio St.3d 12, syllabus; see, also, Statev. Franklin, 97 Ohio St.3d 1; 2002-Ohio-5304, at ¶ 61.
 {¶ 64} In State v. Eskridge (1988), 38 Ohio St.3d 56, the Ohio Supreme Court expanded the definition of force in a case involving the rape of a four-year old child by her father.
 {¶ 65} "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength." (Citation omitted.) Id. at paragraph one of the syllabus.
 {¶ 66} In State v. Schaim (1992), 65 Ohio St.3d 51, the Ohio Supreme Court again expanded the definition of force in the context of a pattern of incest between a father and his twenty-year-old daughter. Distinguishing Eskridge, the Schaim court held:
 {¶ 67} "A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit. A threat of force can be inferred from the circumstances surrounding sexual conduct, but a pattern of incest will not substitute for the element of force where the state introduces no evidence that an adult victim believed that the defendant might use physical force against her." (Citation omitted.) Id. at paragraph one of the syllabus.
 {¶ 68} The Ohio Supreme Court had an opportunity to yet again visit the issue of force in the context of rape in State v. Dye (1998),82 Ohio St.3d 323, wherein the court held:
 {¶ 69} "A person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint." Id. at paragraph one of syllabus.
 {¶ 70} As can be surmised from this case law, the definition of force as is applicable to a charge of rape involving a minor has taken on an expansive form because of the nature of the relationship and the age of the victim. Appellant argues that it is immaterial that the definition of force may have been expanded to support a conviction for rape of a minor but that expansion does not alter the trial court's authority to amend the statutory definition of force for purposes of instructing the jury. We are unpersuaded by appellant's sophisty.
 {¶ 71} We find that the trial court's instruction to the jury regarding the definition of force in this case to be appropriate. Moreover, and as should be well known to appellant's counsel, this court has already addressed this identical issue in State v. Valentine (July 17, 1997), Cuyahoga App. No. 71301 at 24-26, 1997 Ohio App. Lexis 3094 and found a similar instruction to likewise be appropriate. See, also,State v. Poe (Oct. 24, 2000), 10th Dist. No. 00AP-300, 2000 Ohio App. Lexis 4912.
 {¶ 72} Accordingly, because we see no error in the instruction, we need not analyze this assignment of error for plain error. Appellant's seventh assignment of error is not well taken and is overruled.
B. Instruction for Rape/Gross Sexual Imposition
 {¶ 73} In his eighth assignment of error, appellant contends that the trial court erred in failing to instruct the jury on an element of the offense of rape and gross sexual imposition. In particular, appellant complains that the trial court omitted defining the element "not his spouse" from its instructions and, in doing so, denied him due process of law. Reiterating, appellant did not object to the jury instructions and, therefore, has waived all but plain error.
 {¶ 74} It is well established that terms of common usage need not be defined for the jury. See State v. Gross, 97 Ohio St.3d 121 at ¶ 106, 2002-Ohio-5524, quoting State v. Riggins (1986), 35 Ohio App.3d 1,8. Because the term "not his spouse" is a term of common usage, the trial court did not err when it failed to define this term. Moreover, it was well established during the course of trial that appellant's relationship to the victims was akin to that of a stepparent, since appellant was the live-in boyfriend of the victims' mother. Consequently, it cannot be said that the jury was at a loss as to whether the victims in this case were "not the spouse" of appellant.
 {¶ 75} Appellant's eighth assignment of error is not well taken and is overruled.
C. Instruction on Intimidation
 {¶ 76} In his ninth assignment of error, appellant contends that the trial court erred when it omitted an element of intimidation from the indictment but when instructing the jury, included this element. In particular, appellant claims that the indictment failed to allege that the victim's mother was a witness "in a criminal action or proceeding" but included that language in its charge to the jury.
 {¶ 77} R.C. 2921.04(B) governs of the offense of intimidation and provides that "[n]o person, knowingly and by force or by unlawful threat of harm * * * shall attempt to influence, intimidate, or hinder * * * [a] witness involved in a criminal action or proceeding in the discharge of the duties of the * * * witness."
 {¶ 78} Appellant is correct in stating that the language "in a criminal action or proceeding" is absent in the indictment for this charge. However, we do not find that that phrase's absence alters or omits an element of the offense. The indictment clearly states that the victim's mother is a "witness." While the better practice would have been to include the statutory language "in a criminal action or proceeding," we find that the indictment's failure to include this language constitutes harmless error because it does not materially alter an element of the offense of intimidation.
 {¶ 79} Appellant's ninth assignment of error is not well taken and is overruled.
D. Use of Specific Names in Instructions
 {¶ 80} In his tenth assignment of error, appellant argues, in part, that the trial court failed to specifically name the victims when instructing the jury. Based on our discussion in Section IV, infra, we see no plain error.
 {¶ 81} To the extent that appellant's tenth assignment of error is directed at the trial court's instructions to the jury, it is not well taken and is overruled.
 IV. Indictment
A. Use of Jane Doe Designations
 {¶ 82} In his tenth assignment of error, appellant argues, in part, that indictments were constitutionally defective in that he was denied his constitutional right to know the nature and cause of the accusations against him when the indictment failed to specifically name the victims and, instead, referred to the victims by Jane Doe designations.
 {¶ 83} Crim.R. 7(B) governs the nature and contents of an indictment and provides that it "contain a statement that the defendant has committed a public offense specified in the indictment." The statement may be made in ordinary and concise language and does not need to include allegations not essential to be proved. Furthermore, the statement "may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged."
 {¶ 84} In this case, appellant was charged with several counts of rape, in violation of R.C. 2907.02. Subsection (A)(1) of this statute provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age * * *." Subsection (A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 85} A review of the indictments in this case support that the language contained in those indictments mirrors the statutory language with the exception of identifying "another" or "other person" as "Jane Doe I" and, therefore, is in compliance with Crim.R. 7(B). While an indictment is defective if a vital element is omitted, an indictment is not defective if the name of a specific victim is not an essential element of the charged offense. See State v. Phillips (1991),77 Ohio App.3d 663, 665-666, 1991 Ohio App. Lexis 4842; see, also, Statev. Anthony (Sept. 30, 1994), 11th Dist. No. 93-L-096, 1994 Ohio App. Lexis 4432. Nonetheless, we are unwilling to opine that in all circumstances the name of a victim is not an essential element of a sexual assault offense. Cf. State v. Kerr (Oct. 9, 1998), 11th Dist. No. 97-L-032 at 18, 1998 Ohio App. Lexis 4850. We find, however, that where a criminal defendant has actual knowledge of the identity of the victim, an indictment is not constitutionally defective for identifying that victim in a manner that would protect that victim's identity. See R.C. 2941.08(K); see, also, Taylor v. State (Wyo. 2000), 7 P.3d 15, 19; Lowseth v. State
(Wyo. 1994), 875 P.2d 725, 728; McDermott v. State (Wyo. 1994),870 P.2d 339, 348; cf. Walker v. State (Wyo. 1993), 847 P.2d 542. This is especially true in cases of sexual assault involving minors.
 {¶ 86} Consequently, we see no constitutional violation where the defendant possesses actual knowledge of the identity of a victim. Here, the identity of the victims has been known to appellant and, indeed, appellant heard the victims testify as to his conduct. Accordingly, we do not find the indictment to be defective because it identified the victims merely as Jane Doe I and II.
 {¶ 87} To the extent that appellant's tenth assignment of error is directed at the substance of the indictment, it is not well taken and is overruled.
B. Particularity of Dates
 {¶ 88} In his eleventh assignment of error, appellant contends that he was denied his constitutional right to know the nature of the accusations against him when the dates of the offenses were not alleged with sufficient particularity. Succinctly, appellant argues that the indictment merely alleges a month and a year that the offenses occurred without specifying any particular dates.
 {¶ 89} Young victims of sexual abuse invariably do not have the temporal memory of an adult and, therefore, often are unable to remember exact times and dates. This is particularly true when the offenses involve a repeated course of conduct over a lengthy period of time. Statev. Barnecut (1988), 44 Ohio App.3d 149, 151-152. "Because the precise date and time of the offense of rape are not essential elements of that crime, a certain degree of inexactitude in averring the date of the offense is not necessarily fatal to its prosecution." State v.Krzywkowski, Cuyahoga App. No. 80392, 2002-Ohio-4438, at ¶ 129, quoting State v. Marrs, 2nd Dist. No. 18903, 2002-Ohio-3300, at ¶ 9; see, also, State v. Sellards (1987), 17 Ohio St.3d 169; State v.Lawrinson (1990), 49 Ohio St.3d 238. Nonetheless, if the inexactitude prejudices the defendant, i.e., limits the defendant's ability to fairly defend himself, the lack of specificity may be impermissible. Barnecutt,44 Ohio App.3d at 151, citing Sellards, supra.
 {¶ 90} Appellant has demonstrated no prejudice nor are we able to discern any. Appellant has not shown how the failure to produce a specific time or date in the indictment caused a material detriment to the preparation of his defense. Consequently, we do not find that the indictment is constitutionally infirm because it does not specify the exact dates of the offenses at issue.
 {¶ 91} Appellant's eleventh assignment of error is not well taken and is overruled.
 V. Motion for Acquittal
A. Rape and Gross Sexual Imposition Offenses
 {¶ 92} In his twelfth assignment of error, appellant contends that the trial court erred in denying his motion for acquittal for these offenses.
 {¶ 93} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction * * *." The relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia (1979), 443 U.S. 307, at the syllabus. In essence, sufficiency is a test of adequacy. State v.Thompkins (1997), 78 Ohio St.3d 380, 386-387. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass (1967), 10 Ohio St.2d 230, 231.
 {¶ 94} The elements of the offense of rape have been set forth in Section IV(A) of this opinion and will not be repeated again. Gross sexual imposition, on the other hand, is governed by R.C. 2907.05 and provides that "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he offender purposely compels the other person to submit by force or threat of force * * * [or] [t]he other person * * * is less than thirteen years of age * * *."
 {¶ 95} Appellant does not put forth any argument as to how the evidence presented at trial failed to satisfy the elements of any of these offenses but rather makes references to Victim I's testimony, which not only supports that there existed sufficient evidence to support the convictions for rape against Victim I but for gross sexual imposition as well. Victim I testified that appellant touched her breast and her genital area as well as penetrated her with his finger and/or penis. Certainly, this testimony, if believed, would convince a rational trier of fact as to appellant's guilt for these offenses beyond a reasonable doubt.
 {¶ 96} The same is true regarding appellant's convictions for gross sexual imposition involving Victim II. This victim testified that appellant would instruct her to go in her mother's room and undress whereupon appellant would rub or otherwise touch Victim II's genital area and buttocks. This touching constitutes sexual contact and, since it was established that this victim was under the age of thirteen at the time of these offenses, satisfies the elements of gross sexual imposition under R.C. 2907.05(A)(4).
 {¶ 97} Appellant's twelfth assignment of error is not well taken and is overruled.
B. Intimidation Offense
 {¶ 98} In his thirteenth assignment of error, appellant contends that the court erroneously denied his motion for acquittal for this offense.
 {¶ 99} The elements of the offense of intimidation have been set forth in Section III(C) of this opinion and likewise will not be repeated. Summarizing, this statute prohibits a person, by force or threat of harm, from influencing, intimidating or hindering a witness who is involved or will be testifying in a criminal action. The victims' mother testified as follows:
 {¶ 100} "He told me that, he said, bitch, if I go to jail, this time I'm going to get you and your kids. I'm going to get you all one by one."
 {¶ 101} Certainly, appellant's statements to the victims' mother, who would be testifying in the upcoming trial, could be construed by a rational trier of fact as threatening harm to the victims' mother and her family. Indeed, the mother testified that she felt scared and threatened by appellant's statements. Consequently, there was sufficient evidence to support the conviction for intimidation and, therefore, the trial court did not err in denying appellant's motion for acquittal.
 {¶ 102} Appellant's thirteenth assignment of error is not well taken and is overruled.
 VI. Manifest Weight of the Evidence {¶ 103} In his fourteenth assignment of error, appellant argues that the verdicts are against the manifest weight of the evidence.
 {¶ 104} A manifest-weight-of-the-evidence argument involves determining whether there exists a greater amount of credible evidence to support one side of the issue rather than the other. State v. Thompkins, 78 Ohio St.3d at 387. It is not a question of mathematics, but depends on its effect in inducing belief. Id. A reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the factfinder clearly lost his way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Martin (1983), 20 Ohio App.3d 172, 175. Consequently, it is within the purview of the jury to believe all or part of any testimony they hear. We, as a reviewing court, must only consider whether the evidence and any reasonable inferences therefrom can support the jury's verdict. In so doing, we consider the witnesses' credibility and whether the jury lost its way in resolving conflicting evidence.
 {¶ 105} With this standard of review in mind, we cannot say that the jury lost its way in finding appellant guilty of the offenses for which he was charged. The testimony of both victims, the victims' mother, and Dr. Feingold, among others, all support that appellant engaged in inappropriate sexual activity over an extended period of time with the two minor female children of his live-in girlfriend. Consequently, we do not find that the jury's verdict is against the manifest weight of the evidence.
 {¶ 106} Appellant's fourteenth assignment of error is not well taken and is overruled.
 VII. Claims of Ineffective Assistance of Counsel {¶ 107} In his fifteenth assignment of error, appellant claims he was denied the effective assistance of counsel when trial counsel failed to object to hearsay testimony and to the late notice of a witness.
 {¶ 108} In order to establish a claim of ineffective assistance of counsel, a criminal defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.Strickland v. Washington (1984), 466 U.S. 668; State v. Bradley (1989),42 Ohio St.3d 136, cert. denied (1990), 497 U.S. 1011. Prejudice is demonstrated when the defendant proves that, but for counsel's actions, there is a reasonable probability that the result of the proceedings would have been different. Strickland v. Washington, 466 U.S. at 694.
 {¶ 109} Appellant makes several references to testimony by various witnesses that he argues are hearsay. Appellant makes no argument, however, as to how this testimony impacts the specific charges against him or how he was prejudiced by them. Consequently, even if we were to find these statements to be inadmissible hearsay, appellant has failed to demonstrate how this testimony prejudiced his defense and we see none. Excluding this testimony from consideration, there is no reasonable probability that the outcome of trial would have been different. The victims' own testimony regarding the actions of appellant could support the jury's verdict without the independent corroboration of the witnesses to which appellant refers.
 {¶ 110} The same is true as pertains to the testimony of witness John Pettis. Pettis was an inmate sharing a holding cell with appellant while both were awaiting trial. During the course of their time together, appellant apparently made some incriminating statements to Pettis who then, in turn, informed one of the assistant prosecutors. Pettis was then called as a witness without objection by appellant's trial counsel. Appellant claims that defense counsel should have requested a continuance under Crim.R. 16(E)(3) and that he was denied the effective assistance of counsel when counsel failed to do so. We disagree.
 {¶ 111} Crim.R. 16(E)(3) speaks to a party's willful noncompliance with the criminal discovery rules and the discretionary action a court can take to remedy the situation. It is well established that there is a strong presumption that a licensed attorney is competent and that the challenged action reflects sound trial strategy within the range of reasonable professional assistance. State v. Bradley,42 Ohio St.3d at 142. While defense counsel certainly could have objected and requested a continuance when this witness was called by the state, it is also within the realm of possibilities that, in defense counsel's professional judgment, that to do so was unnecessary. Pettis was merely testifying to what he had allegedly heard appellant relay to him while both were awaiting to be called for trial. The testimony itself was brief and did not appear to require in-depth investigation or research. Moreover, even in the absence of this testimony, we cannot say that the outcome of trial would have been different.
 {¶ 112} Appellant's fifteenth assignment of error is not well taken and is overruled.
 VIII. Sentencing Issues {¶ 113} In his sixteenth assignment of error, appellant challenges the imposition of consecutive life sentences as being contrary to law and cruel and unusual punishment.
 {¶ 114} While R.C. 2929.14 governs basic prison terms, R.C.2907.02(B) mandates a penalty of life imprisonment for an offender convicted of rape of a person less than thirteen years. Nonetheless, R.C. 2929.14(E)(4) authorizes a court to impose consecutive sentences only when it concludes that the sentence is (1) necessary to protect the public from future crime or to punish the offender; (2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) the court finds one of the following: (a) the crimes were committed while awaiting trial or sentencing, under sanction or under post-release control; (b) the harm caused by multiple offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of his offense; or (c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime. R.C. 2929.14(E)(4).
 {¶ 115} Imposing consecutive prison terms for convictions of multiple offenses, therefore, is appropriate upon making certain findings as enumerated in this statute. When the trial court does so, however, it must state its reasons on the record. See R.C. 2929.19(B)(2)(c). Failure to sufficiently state these reasons on the record constitutes reversible error. See State v. Albert (1997), 124 Ohio App.3d 225; see, also, Statev. Gary (2001), 141 Ohio App.3d 194.
 {¶ 116} After detailing appellant's criminal history and the harm inflicted on his young victims over a period of time, the court found that a single term of imprisonment did not adequately reflect the seriousness of the offense. Continuing, the court stated:
 {¶ 117} "I have found, based upon the number of times that this happened with the youngsters, that there is a great likelihood that it would happen again in the future, and that because of the likelihood of future offenses, the public interest demands that you be separated from the community in order to protect the community from future occurrences of this nature."
 {¶ 118} As can be surmised, the court discussed the need to protect the public from future crime, the seriousness of appellant's conduct and the inadequacy of a single term of imprisonment because of the seriousness of that conduct. Consequently, we find that the trial court complied with R.C. 2929.14(E)(4) and 2929.19(B)(2) in imposing consecutive life sentences.
 {¶ 119} While the Eighth Amendment to the Constitution of the United States prohibits the infliction of cruel and unusual punishment, it has been historically limited to torture or other barbarous acts; i.e., punishments that are disproportionate to the offense so as to "shock the moral sense of the community." Robinson v. California (1962),370 U.S. 660, 675 (Douglas, J., concurring); see, also, State v.Weitbrecht (1999), 86 Ohio St.3d 368, 370, citing McDougle v. Maxwell
(1964), 1 Ohio St.2d 68 and State v. Chaffin (1972), 30 Ohio St.2d 13, paragraph three of the syllabus; State v. Barnes (1999),136 Ohio App.3d 430. Nonetheless, the imposition of a sentence that falls within terms proscribed by a valid statute does not constitute cruel and unusual punishment. McDougle, 1 Ohio St.2d at 69; see, also, State v.Juliano (1970), 24 Ohio St.2d 117, 120.
 {¶ 120} Because we have determined that the trial court complied with the statutory framework in imposing consecutive sentences, appellant's sentence, albeit severe, falls within the term permissible by statute and, thus, does not constitute cruel and unusual punishment under McDougle.
 {¶ 121} Appellant's sixteenth assignment of error is not well taken and is overruled.
 IX. Constitutionality of Rape Statute {¶ 122} In his seventeenth assignment of error, appellant contends that R.C. 2907.02(A)(1)(b) is unconstitutional because it does not require that an offender know the age of the victim. Succinctly, appellant argues that this statute impermissibly imposes strict liability by failing to require knowledge of a victim's age as an element of the offense.
 {¶ 123} Appellant did not challenge the constitutionality of R.C.2907.02(A)(1)(b) in the trial court. The "failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore [the issue] need not be heard for the first time on appeal." State v. Awan (1986), 22 Ohio St.3d 120, paragraph one of the syllabus. Nonetheless, a reviewing court has, in its discretion, considered "constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it." In re M.D. (1988), 38 Ohio St.3d 149. We see no error, however, plain or otherwise.
 {¶ 124} R.C. 2907.02(A)(1)(b) expressly provides that the rape of a child under thirteen does not require a mental element. "No person shall engage in sexual conduct with another * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 125} Moreover, as appellant's counsel should be well aware, this court has previously addressed this issue in State v. Haywood (June 7, 2001), Cuyahoga App. No. 78276, 2001 Ohio App. Lexis 2545. Rejecting appellant's argument, the Haywood court stated:
 {¶ 126} "There is no constitutional bar to attaching felony punishment to strict liability offenses. Although a criminal statute that does not specifically state a mens rea requirement will not be construed as a strict liability offense unless that intent is plainly shown, this doctrine is a matter of statutory construction, not constitutional law. In fact, sexual conduct with a child was considered a strict liability offense at common law, and has long been recognized as an exception to the general requirement of guilty knowledge in the criminal law." (Citations omitted.) Id. at 12-13.
 {¶ 127} Appellant's seventeenth assignment of error is not well taken and is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J., AND COLLEEN CONWAY COONEY, J., CONCUR.
[1] In its journal entry sentencing appellant, the trial court incorrectly includes count 55, the second intimidation charge, as one in which the jury previously found appellant guilty. This is untrue. The transcript of the proceedings support that the trial court granted appellant's motion for acquittal as to this charge and the state did not oppose. In truth, it conceded that it did not prove the allegations contained in this count of the indictment. Consequently, the trial court's reference to this charge as one in which appellant was found guilty and ultimately sentenced is incorrect.