OPINION
{¶ 1} Defendant-appellant, James Matthews, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of aggravated robbery in violation of R.C. 2911.01. For the reasons that follow, we affirm defendant's conviction.
 {¶ 2} The facts, as testified to at trial, may be summarized as follows:
 {¶ 3} Sometime between 5:00 and 5:30 a.m. on November 19, 2002, Lee Miller was walking along a side street near a construction site just east of The Ohio State University campus when a man, later identified as defendant, called to him and asked that he stop. Miller ignored defendant's request and kept walking. Shortly thereafter, a second man requested that Miller stop. When Miller slowed down to respond to the second man, defendant caught up to him and began talking to him. Defendant, who was holding a knife in his hand, then grabbed Miller's coat and attempted to throw him to the ground. As defendant and Miller struggled, defendant told Miller he was going to kill him and then rob him. The second man remained nearby but did not take part in the altercation. As Miller tried to free himself from defendant's grasp, defendant ripped Miller's coat from him. Freed of his coat, Miller ran a few blocks down the street toward a police car that was parked in a vacant lot and reported what had happened.
 {¶ 4} Because the area where the incident took place was well-lit, Miller was able to describe his assailant to the officer. A few minutes later, the officer observed defendant and another man walking in a nearby alley. Defendant was walking about 20 yards ahead of the other man. After the officer detained the second man, defendant approached the officer, reported that he had been robbed, and pointed in the direction of where Miller was standing. The officer recognized defendant as someone who often pan-handled in the area. After the officer apprehended defendant, Miller positively identified defendant as the man who had threatened to rob him at knifepoint. Miller's coat and two knives were recovered near the scene of the struggle. Miller identified one of the knives as the one with which he was threatened by defendant.
 {¶ 5} On November 21, 2002, defendant was indicted on one count of aggravated robbery, a first-degree felony. The public defender's office was appointed to represent defendant. Following a jury trial, defendant was found guilty as charged in the indictment. The trial court imposed a sentence of nine years' incarceration. Defendant appeals, assigning a single error, as follows:
The trial court erred in failing to conduct a more detailed inquiry into Appellant's claim that his counsel was not prepared for trial, thereby denying his right to the effective assistance of counsel as guaranteed under the state and federal Constitutions.
 {¶ 6} Immediately prior to the jury being impaneled, defendant orally requested that the trial court replace defense counsel and grant defendant a continuance. We glean from the record that defense counsel had previously advised defendant that accepting a plea offer from the prosecution would be in his best interest. Defendant told the court that when he tried to convey to defense counsel that he was innocent and wanted to go to trial, defense counsel "walk[ed] away from [him]." (Tr. 4.) He further stated that he did not think defense counsel was acting in his best interest, that he did not commit the crime for which he was indicted, and that he wanted "somebody that is going to fight for me and believe in me." Id.
 {¶ 7} Defense counsel responded that he had done "the best job [he] could" in counseling defendant regarding the case. Id. Defense counsel stated that he made "certain recommendations" with which defendant did not agree. Id. Defense counsel indicated that he was willing to either withdraw from the case so that counsel with whom defendant would be more comfortable could be appointed or remain as counsel and take the case to trial.
 {¶ 8} Defendant reiterated that he was not guilty of the crime with which he charged and wished to go to trial. He again stated that he wanted to dismiss counsel and "get somebody that can believe in me." Id.
 {¶ 9} The trial court explained to defendant that because defense counsel had been appointed to represent defendant, the court would have to make certain factual findings before dismissing defense counsel. The court further observed that defense counsel was an experienced, "competitive" trial attorney who would "fight as best he [could]" for defendant at trial. (Tr. 6.) Although the court opined that defense counsel provided defendant his best judgment regarding the plea offer, the court reminded defendant that the ultimate decision regarding whether to accept the plea or reject the plea and go to trial remained with defendant.
 {¶ 10} Recognizing that defendant's chief complaint appeared to be that he did not agree with defense counsel's advice that defendant accept the prosecution's plea offer, the trial court explained that offering advice regarding the plea offer was an integral part of defense counsel's duty to advise defendant of all available options regarding the case, including candidly advising defendant as to the probable result of the case. The trial court reiterated that defendant was not obligated to accept the plea, and if defendant chose to reject the plea and go to trial, defense counsel would zealously defend him.
 {¶ 11} Defendant indicated that he understood that he did not have to accept the plea and could take the case to trial, but argued that he "need[ed] a man who [is] going to put up a fight for me." (Tr. 8.) After the trial court reiterated that it had prior experience with defense counsel, defendant ultimately decided to proceed to trial. The trial court then made its ruling, stating: "You understand [defense counsel] is not going to be removed. We'll get a jury up here and get going." Id.
 {¶ 12} By his assignment of error, defendant contends that the trial court erred in failing to conduct a more detailed inquiry into his allegations that defense counsel was not prepared for trial, thereby denying defendant's right to the effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. In support of his argument, defendant relies on the Ohio Supreme Court's decision in Statev. Deal (1969), 17 Ohio St.2d 17, as well as two decisions from this court, State v. VanMeter (July 11, 1985), Franklin App. No. 84AP-987, andState v. Prater (1990), 71 Ohio App.3d 78.
 {¶ 13} In Deal, supra, the Supreme Court of Ohio held that where an indigent defendant questions the effectiveness and adequacy of assigned counsel, the trial court is obligated to inquire into the complaint and make such inquiry a part of the record. Id. at syllabus. In that case, Deal, an indigent accused of armed robbery, attempted to discharge his assigned counsel after the state rested its case. The court provided Deal an opportunity to put his complaint on the record, whereupon Deal asserted that counsel failed to file a notice of alibi defense and to subpoena necessary witnesses. The trial court found that Deal's complaint was belated and unreasonable in light of the fact that Deal did not indicate dissatisfaction with counsel until the state rested. The court proceeded with the trial, asking Deal if he had any witnesses or wished to testify. Deal replied that he had witnesses but they were not present, and that he would not consider testifying as long as he was represented by his current appointed counsel.
 {¶ 14} The Supreme Court found that it was impossible to determine whether Deal was adequately represented because the record contained nothing to indicate why the witnesses were not called or why no alibi defense was prepared. The court determined that it was the trial court's duty to make certain that the record contained an adequate investigation of Deal's complaint and that the trial court should have made it clear in the record whether Deal's action was an arbitrary failure to go forward or a legitimate claim of inadequate representation. The court noted that such a record could have been made if the court had asked Deal's counsel why he had not filed a notice of alibi or subpoenaed Deal's witnesses. The court reversed Deal's conviction and remanded the matter to the trial court for a reinvestigation, on the record, of Deal's claim of incompetent counsel, with instructions that if the claim were unfounded, the court could re-enter the judgment of conviction.
 {¶ 15} In VanMeter, supra, this court reversed a conviction where, prior to commencement of trial, VanMeter requested a continuance in order to obtain new counsel. VanMeter's appointed counsel told the court that he and VanMeter had "fundamental differences with the type of defense that would be presented" and that VanMeter felt that counsel was not "looking out for his best interest." Id. This court reversed because the trial court "did not make any particular inquiry of appellant as to his beliefs regarding his counsel's representation, his lack of confidence in the quality of representation, or the like." Id.
 {¶ 16} The trial court was unaware that VanMeter met assigned counsel only one day prior to trial. Further, VanMeter became upset during the prosecutor's opening statement. In addition, defense counsel, at the close of the state's case, averred that VanMeter wanted to present a defense but desired a continuance to consult with another attorney. Instead of inquiring about the matter, the trial court informed the jury that VanMeter did not wish to present a defense and then charged them after the state closed its case.
 {¶ 17} This court noted that the trial court did not address VanMeter personally as to his reasons for feeling dissatisfied and distrustful of counsel, but instead indicated several times that "we are going to trial." Id. Further, the trial court did not make findings of fact regarding counsel's ability to adequately represent VanMeter. Instead, the trial court, in response to defense counsel's request that he be relieved from the case, stated that "I am not going to fire you just because he doesn't * * * want you on his case." Id.
 {¶ 18} This court also noted that after defense counsel informed the court following voir dire that VanMeter did not want defense counsel to represent him, the trial court stated: "[y]ou are not going to change my mind about anything about the way the trial is being conducted" and made no further inquiry. Id. Similarly, after VanMeter indicated following the state's opening that he wanted his own attorney, the trial court failed to ask VanMeter why he was so adamant in his refusal to be represented by assigned counsel.
 {¶ 19} Based on these facts, this court found that the trial court erred to the prejudice of VanMeter in failing to investigate and conduct an inquiry of defense counsel and VanMeter in order to ascertain the source of VanMeter's dissatisfaction with assigned counsel's representation. Accordingly, in accordance with Deal, this court reversed VanMeter's conviction and remanded the case to the trial court for a "reinvestigation to be put on the record, with the instruction that, if the claim is determined to be unfounded, the trial court may re-enter the judgment of conviction. In the event that the court finds the allegations of ineffective assistance of counsel well founded, the court may, in the exercise of its sound discretion, grant a new trial." Id.
 {¶ 20} In Prater, supra, prior to the jury being brought in for voir dire, Prater requested that his appointed counsel be replaced. In response, the trial court addressed Prater and averred that it was responsible for providing him a speedy public trial. The trial court further stated that it had no concerns regarding assigned counsel's ability to represent Prater, opining that counsel was "a capable, conscientious, honest lawyer" who was "trying to do his job." Id at 80. The trial court refused to appoint new counsel and stated that it would proceed to trial, which was scheduled to begin that afternoon.
 {¶ 21} Following further protest by Prater, the trial court informed him that his assigned counsel would represent him because he was entitled to a speedy public trial. Further, the trial court told Prater that the reason he did not have an attorney was because he had not been able to hire one. The trial court rejected Prater's argument that he had not had time to hire an attorney and reiterated that it would not appoint another attorney because current counsel was competent to represent Prater. The trial court indicated that it did not know anything about the case, then ordered that a jury be impaneled.
 {¶ 22} Thereafter, defense counsel again brought Prater's request to the court's attention, stating that Prater had expressed a strong desire to have counsel relieved, had refused to allow counsel to represent him, and had contacted another attorney. The trial court refused to grant a continuance, stating that Prater was already represented by a competent attorney. When Prater attempted to address the court, the court interjected, averring that it would not listen to further argument as it had decided to proceed with trial. Noting that Prater had had the opportunity to take the matter up in the weeks and months preceding trial, the trial court reiterated that Prater was entitled to a speedy public trial and further asserted that the state of Ohio was entitled to a timely disposition in the case. After the trial court informed Prater that he "should concentrate on letting your lawyer handle this case," Prater stated that he had fired him. Id. at 81.
 {¶ 23} Finding the facts of the case similar to those in VanMeter,
this court determined that the trial court breached its duty to inquire on the record regarding the source of Prater's dissatisfaction with his appointed counsel. In particular, this court noted that instead of asking Prater why he did not want appointed counsel to represent him, the court asserted that Prater did not have an attorney because he had not been able to hire one. This court further observed that the trial court admitted to being unfamiliar with the case and found that Prater was not seeking to delay the proceedings. This court also noted that the trial court had expressed concern about Prater's speedy trial rights, which may be waived. Finally, this court observed that instead of holding a hearing or asking Prater a few questions, the court denied Prater new counsel based upon the court's personal knowledge of the reputation, competence and performance of appointed counsel in other cases.
 {¶ 24} We find the instant case distinguishable from Deal,VanMeter and Prater. Initially, we note that the trial court addressed defendant personally and specifically inquired as to his reasons for his dissatisfaction with his appointed counsel. Further, in Deal andVanMeter, the accuseds challenged the effectiveness and adequacy of assigned counsels' trial preparation or trial strategy. Contrary to defendant's contention on appeal, defendant did not indicate that he felt that defense counsel was not prepared for trial, nor did he aver that he was unhappy with defense counsel's trial strategy. Defendant did not suggest that defense counsel had failed to take necessary steps in preparing a defense, such as filing a notice of alibi or subpoenaing necessary witnesses, as in Deal, nor did he indicate that he was dissatisfied with the type of defense that would be presented, as inVanMeter. Rather, defendant averred only that he was dissatisfied with defense counsel's advice that he accept the prosecution's plea offer because he was innocent and wanted to go to trial. Moreover, we note that after the initial discussion between defendant and the trial court, defendant agreed to proceed to trial with his appointed counsel and thereafter raised no concerns on the record regarding counsel's representation.
 {¶ 25} This case is similar to State v. Kelly (Aug. 22, 2000), Franklin App. No. 99AP-1302, wherein this court refused to reverse a trial court's decision to overrule Kelly's motion for removal of appointed counsel where the asserted conflict between Kelly and defense counsel was that Kelly told his counsel he was innocent, yet appointed counsel advised Kelly that he would lose at trial and should accept the state's offer of a plea bargain. Citing State v. Cowans (1999),87 Ohio St.3d 68, 72, wherein the Ohio Supreme Court held that an appointed counsel's exploration of plea options based upon a belief that his or her client might be guilty is not good cause for substitution, this court found that the trial court did not abuse its discretion in overruling Kelly's motion to replace appointed counsel. This court explained:
Here, [Kelly's] chief complaints were that his attorney had not met with him and was advising him to accept a plea bargain because he was going to lose at trial. * * * "`A lawyer has a duty to give the accused an honest appraisal of his case. * * * Counsel has a duty to be candid; he has no duty to be optimistic when the facts do not warrant optimism.'"Brown v. United States (C.A.D.C. 1959), 264 F.2d 363, 369 (en banc.) quoted in McKee v. Harris (C.A. 2, 1981), 649 F.2d 927. "`If the rule were otherwise, appointed counsel could be replaced for doing little more than giving their clients honest advice.'" Id. at 932, quoting McKee v.Harris (S.D.N.Y. 1980), 485 F. Supp. 866, 869.
See, also, State v. Patterson (May 2, 1997), Montgomery App. No. 15699, wherein the court determined that the trial court had conducted a meaningful inquiry into Patterson's motion for new counsel in that the court offered Patterson the opportunity to speak in regard to the motion, specifically addressed Patterson's contention regarding plea negotiations and explained that defense counsel was obligated to determine whether a plea agreement would have been in Patterson's best interests and to explore possible negotiated pleas with Patterson and the state, and made its inquiry part of the record.
 {¶ 26} Upon review of the record in this case, we conclude that the trial court conducted a meaningful inquiry into defendant's request for new counsel. The trial court offered defendant the opportunity to place his concerns about counsel on the record. When provided this opportunity, defendant's comments were limited to the assertion that his counsel could not properly represent him because counsel believed him to be guilty and, based upon that belief, advised him to accept the prosecution's plea offer. The trial court allowed defense counsel to explain his position. Defense counsel acknowledged that defendant did not agree with the recommendation that he accept the plea offer, but indicated that he was prepared to take the case to trial. The trial court specifically addressed defendant's concern regarding the state's plea offer and fully explained to defendant defense counsel's duty to provide candid advice regarding all available defense options, including the option to accept the prosecution's plea bargain. Following this explanation, the trial court reminded defendant that the ultimate decision as to whether to accept the plea or go to trial remained with defendant. After indicating that he understood his options, defendant ultimately decided to proceed to trial, and as we have previously noted, lodged no further protest regarding the adequacy or effectiveness of counsel's representation. Accordingly, in light of these circumstances, we find that the trial court conducted a meaningful inquiry, on the record, into defendant's request for new counsel.
 {¶ 27} Further, to the extent defendant's assignment of error raises the issue of whether defendant was denied effective assistance of counsel due to the court's failure to inquire into his dissatisfaction with appointed counsel, we find that defendant has not met the standard set forth in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, under which it must be shown that (1) counsel's performance was in fact deficient, and (2) but for counsel's errors the verdict would have been different.
 {¶ 28} Defendant argues that he was deprived of the effective assistance of counsel because his counsel failed to give an opening statement, failed to call a particular witness, failed to develop a defense theory, and failed to present any evidence in his case-in-chief.
 {¶ 29} In reviewing the trial strategy of counsel, we must extend great deference to counsel's decisions. Debatable trial tactics and strategies generally do not constitute ineffective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45, 49.
 {¶ 30} At the start of trial, counsel reserved opening statement for its case-in-chief. As the trial developed, defense counsel decided not to present any evidence following the state's case, so that the close of the evidence was followed immediately by closing arguments. By not presenting evidence in the case-in-chief, defense counsel obviated the need for an opening statement. The decision not to make an opening statement is a tactical decision that will not ordinarily rise to the level of ineffective assistance of counsel. See State v. Williams
(1991), 74 Ohio App.3d 686, 700. Moreover, defendant fails to demonstrate how this decision prejudiced his defense.
 {¶ 31} Similarly, counsel's failure to call the second man who was at the scene could certainly be viewed as a legitimate trial strategy. Initially, we note that the record contains no facts to indicate how the witness would have testified. It is impossible for a court to determine on a direct appeal from a criminal conviction whether counsel was ineffective in his representation where the allegation of ineffectiveness is based on facts dehors the record. State v. Gibson (1980),69 Ohio App.2d 91, 95. Defendant's claim regarding counsel's failure to call the witness is based on facts that cannot be ascertained from the record before this court. Therefore, we may not consider such claims in this direct appeal. A ruling in defendant's favor would be "purely speculative." State v. Madrigal (2000), 87 Ohio St.3d 378, 390. Further, assuming arguendo that we could properly consider defendant's claim, it is doubtful that defendant could establish that trial counsel rendered ineffective assistance. "[C]ounsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." State v. Treesh (2001), 90 Ohio St.3d 460, 489. Moreover, pertinent to this appeal, failure to call a witness is not ineffective assistance if calling that witness opens the door to unfavorable testimony that counsel might reasonably conclude would likely outweigh the value of any favorable testimony the witness might offer.State v. Reynolds, 148 Ohio App.3d 578, 2002-Ohio-3811, at ¶ 74. If the incident occurred as described by Miller, the second man would only provide testimony that would be unfavorable to defendant.
 {¶ 32} Similarly, defendant's contentions that counsel was ineffective in failing to develop a defense theory and present evidence in the case-in-chief are without merit. Counsel aggressively attacked the state's case by conducting vigorous cross-examination of the state's witnesses. Counsel's theory of the case, that Miller initiated the struggle because he felt threatened when defendant approached him, was developed effectively through cross-examination and was argued fervently during closing argument. Counsel's effort to expose inconsistencies in the testimony of the state's witnesses and raise questions regarding the adequacy of the state's investigation was a legitimate trial strategy in light of the facts and circumstances in the case. See State v. Sandy
(1982), 6 Ohio App.3d 37, 38. ("Appellant's counsel apparently relied upon the fact that he believed that the jury would find that the state had not proven its case in chief and we cannot say from a reading of this record that this was not a proper trial tactic.") On the whole, counsel's strategy, although unsuccessful, was a legitimate approach to defendant's defense. The record demonstrates that defense counsel represented defendant in a competent manner. Defendant's assignment of error is not well-taken.
 {¶ 33} For the foregoing reasons, defendant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
LAZARUS and WATSON, JJ., concur.
DESHLER, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.