OPINION
{¶ 1} Defendant-appellant, Otto R. Medina, appeals from a judgment of conviction for felonious assault with a firearm specification in violation of R.C. 2903.11 following a jury trial. For the following reasons, we affirm.
 {¶ 2} The following facts are based primarily on the testimony of the victim. There were no other witnesses to the crime and appellant did not testify.
 {¶ 3} On the evening of June 9, 2002, at approximately 7:15 p.m., Miguel Escobar went to La Cantina, a bar and pool hall near the Lincoln Park area of Columbus, Ohio. Escobar was in La Cantina for about 10 to 20 minutes when he was confronted by appellant. The appellant was romantically involved with Escobar's former girlfriend, Yerika Allejo. Appellant quickly became confrontational and accused Escobar of telling Allejo that appellant was a drug dealer and a thief. Appellant indicated that he wanted to "settle" the problem with Escobar. Escobar understood this to mean that appellant wanted to fight. Escobar followed appellant outside where they each got into their respective cars. Escobar was to follow appellant to a destination away from the bar. Escobar drove a white Chevrolet Astro van and appellant drove a green car.
 {¶ 4} After driving several blocks, appellant suddenly braked, causing Escobar's vehicle to hit appellant's vehicle. At that same instant, Escobar noticed that appellant was holding a handgun. Appellant did a quick U-turn so that his vehicle was facing Escobar's vehicle. Appellant then fired a handgun at Escobar. The bullet struck the driver's side mirror, entered Escobar's left shoulder, exited near Escobar's neck and then shattered on a metal bar in the driver's seat. Escobar testified that he was able to get a good look at appellant's face as appellant fired at him.
 {¶ 5} Escobar drove himself immediately to the emergency room at Doctor's West Hospital. Appellant followed him until they got close to the hospital. Escobar left his car running in the parking lot and ran into the hospital where he received treatment for his injuries.
 {¶ 6} A hospital employee notified law enforcement authorities of Escobar's injuries. Shortly thereafter, a sheriff deputy interviewed Escobar in the hospital. Escobar identified appellant as the shooter by name. Based upon this identification, appellant's name was broadcast over the police radio. At about the same time, appellant reported a hit-skip accident to the security officers at the Lincoln Park subdivision.
 {¶ 7} Sheriff deputies responded to Lincoln Park and found appellant. Appellant consented to a search of his automobile. No evidence relating to the crime was discovered. The deputies drove appellant to Doctor's West Hospital where appellant identified Escobar's vehicle as the vehicle that hit his vehicle in the Lincoln Park complex. The deputies then took appellant to Escobar. Escobar immediately identified appellant as the person who shot him. Sometime later, Escobar also picked appellant's photo out of a photo array.
 {¶ 8} The handgun allegedly used by appellant was never recovered. A gunshot residue test administered to appellant three hours after the shooting was negative. Both Escobar's vehicle and appellant's vehicle exhibited damage consistent with Escobar's description of the automobile accident.
 {¶ 9} Appellant was indicted for felonious assault, a felony of the second degree, with firearm specification. The case was tried to a jury. The first trial resulted in a hung jury. The case was re-tried in May 2005. The jury found appellant guilty as charged. The trial court imposed a three-year term of imprisonment for felonious assault, consecutive to a three-year term for the firearm specification.
 {¶ 10} Appellant appealed, assigning the following errors:
1. THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE DOES NOT SUSTAIN A VERDICT OF GUILTY OF THE OFFENSE OF FELONIOUS ASSAULT WITH FIREARM SPECIFICATION IN VIOLATION OF SECTION 2903.11 OF THE OHIO REVISED CODE, A FELONY OF THE SECOND DEGREE.
2. DUE TO A SUBSTANTIAL VIOLATION OF AN ESSENTIAL DUTY OF TRIAL COUNSEL, APPELLANT HAD INEFFEC-TIVE ASSISTANCE OF COUNSEL DURING HIS TRIAL.
 {¶ 11} Appellant contends in his first assignment of error that the weight and sufficiency of the evidence does not support the guilty verdict. "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997),78 Ohio St.3d 380, paragraph two of the syllabus. Therefore, each standard will be separately delineated.
 {¶ 12} The Supreme Court of Ohio described the role of an appellate court presented with a sufficiency of the evidence argument in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 {¶ 13} Whether the evidence is legally sufficient is a question of law, not fact. Thompkins, supra, at 386. Indeed, in determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781. Consequently, evaluation of the witness' credibility is not proper on review for evidentiary sufficiency.State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79;State v. Thomas (1982), 70 Ohio St.2d 79, 80 (weight to be given the evidence and the credibility of the witnesses is primarily for the trier of fact). A jury verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001), 90 Ohio St.3d 460, 484; Jenks,
supra, at 273.
 {¶ 14} A manifest weight argument is evaluated under a different standard. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other."State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 16. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must disagree with the fact finder's resolution of the conflicting testimony. Thompkins, supra, at 387. "`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id. at 387, quoting State v. Martin
(1983), 20 App.3d 172, 175.
 {¶ 15} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The determination of weight and credibility of the evidence is for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230. The trier of fact is in the best position to take into account inconsistencies, along with the witness' manner and demeanor, and determine whether the witness' testimony is credible. State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v. Clarke
(Sept. 25, 2001), Franklin App. No. 01AP-194. The trier of fact is free to believe or disbelieve all or any of the testimony.State v. Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973;State v. Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witness' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28; State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 74.
 {¶ 16} Appellant was convicted of one count of felonious assault with a firearm specification in violation of R.C.2903.11. Therefore, the state had to prove beyond a reasonable doubt that appellant knowingly caused serious physical harm to another or knowingly caused or attempted to cause physical harm to another by means of a deadly weapon or dangerous ordnance. R.C. 2903.11(A)(1) and (2). In order to be convicted of the firearm specification, the state had to prove beyond a reasonable doubt that appellant had a firearm on or about his person or under his control while committing the felonious assault, and/or brandished and/or indicated that he possessed the firearm, and/or used the firearm to facilitate the felonious assault. R.C.2941.145.
 {¶ 17} Appellant first argues that the state's evidence was insufficient to support a conviction. We disagree. The victim, Escobar, testified that he got a good look at the face of the person who shot him. Escobar identified appellant by name as the shooter immediately after receiving treatment in the emergency room at Doctor's West Hospital. Later that evening, Escobar positively identified appellant as the shooter when appellant was brought to the hospital by police. Thereafter, Escobar also picked out appellant's picture from a photo array. Escobar testified that appellant was angry because appellant believed that Escobar was saying bad things about him to a woman with whom appellant was romantically involved. Moreover, Escobar's vehicle hit appellant's vehicle immediately before the shooting. Therefore, appellant had a motive to harm Escobar.
 {¶ 18} Although Escobar's credibility was challenged, we cannot conclude that his testimony lacked credibility to such an extent that his testimony should be completely disregarded. Even though a gun was never found and appellant's gun residue test was negative, there was some physical evidence to support Escobar's testimony. It was undisputed that Escobar suffered serious injuries to his shoulder and neck as a result of a gunshot wound. Both Escobar's vehicle and appellant's vehicle exhibited damage consistent with Escobar's description of the incident. Appellant reported a hit-skip accident in the immediate vicinity where Escobar indicated the crime occurred, thereby placing him at the crime scene. Appellant also identified Escobar's vehicle as the vehicle that hit his vehicle in the Lincoln Park complex. Viewing this evidence in a light most favorable to the prosecution, as we must in assessing a sufficiency claim, we find that a rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of felonious assault for shooting Escobar. Accordingly, appellant's felonious assault conviction with firearm specification was supported by sufficient evidence.
 {¶ 19} Nor can we conclude that the jury's verdict was against the manifest weight of the evidence. Again, Escobar's testimony was uncontroverted. His testimony was corroborated by physical evidence. The fact that Escobar was shot was not disputed and the damage to both vehicles was consistent with Escobar's description of events. Appellant had a motive to harm Escobar and appellant was picked up very near the crime scene shortly after the crime was committed. Given this evidence, we cannot say that this is the exceptional case in which the evidence weighs heavily against the conviction. The jury did not clearly lose its way when it convicted appellant of felonious assault with a firearm specification.
 {¶ 20} Having determined that appellant's conviction for felonious assault with a firearm specification was supported by sufficient evidence and was not against the manifest weight of the evidence, we overrule appellant's first assignment of error.
 {¶ 21} Appellant contends in his second assignment of error that he received ineffective assistance of counsel at trial because his trial counsel did not present any defense witnesses. The burden of showing ineffective assistance of counsel is on the defendant. State v. Smith (1985), 17 Ohio St.3d 98, 100. In order to prevail on an ineffective assistance of counsel claim, appellant must meet the two-prong test enunciated in Stricklandv. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052; accordState v. Bradley (1989), 42 Ohio St.3d 136, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258. Initially, appellant must show that counsel's performance was deficient. To meet that requirement, appellant must show counsel's error was so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Appellant may prove counsel's conduct was deficient by identifying acts or omissions that were not the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Strickland at 690. In analyzing the first prong of Strickland, there is a strong presumption that defense counsel's conduct falls within a wide range of reasonable professional assistance. Id. at 689. Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id., citing Michel v. Louisiana (1955),350 U.S. 91, 101, 76 S.Ct. 158.
 {¶ 22} If appellant successfully proves that counsel's assistance was deficient, the second prong of the Strickland
test requires appellant to prove prejudice in order to prevail.Strickland, at 692. To meet that prong, appellant must show counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable. Id. at 687. Appellant would meet this standard with a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 23} Appellant essentially argues that his counsel's failure to present any defense witnesses to rebut the state's evidence and theory of the case establishes ineffective assistance of counsel. We disagree.
 {¶ 24} In reviewing the trial strategy of counsel, we must extend great deference to counsel's decisions. Debatable trial tactics and strategies generally do not constitute ineffective assistance of counsel. State v. Matthews, Franklin App. No. 03AP-140, 2003-Ohio-6307, at ¶ 29, citing State v. Clayton
(1980), 62 Ohio St.2d 45, 49. Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second guessed by a reviewing court.Treesh, supra, at 489.
 {¶ 25} Here, the record reflects that appellant's counsel had a coherent defense strategy. That strategy was to attack Escobar's credibility and to suggest that someone else may have shot Escobar. Appellant's counsel pursued this strategy primarily through vigorous cross-examination of Escobar. Appellant's counsel also probed weaknesses in the state's case through his cross-examination of a number of police officers. We will not second guess that strategy. Matthews, supra (vigorous cross-examination to expose inconsistencies in testimony and suggestions of an inadequate investigation was legitimate, although unsuccessful strategy). For example, appellant's trial counsel emphasized through his cross-examination of the state's witnesses that no gun was ever recovered and that a gunshot residue test conducted on appellant within three hours after the crime was negative. He also elicited testimony indicting that police officers did not investigate any other possible suspects.
 {¶ 26} Although appellant now points to a number of witnesses that could have been called in appellant's defense, as well as other evidence that could have been presented, we have no way of knowing what that testimony or evidence would have been or whether it would have helped or hurt appellant's defense, because it is outside the record. Although these claims could be pursued in a post-conviction petition, they do not support an ineffective assistance of counsel claim on direct appeal. State v. Malone
(Sept. 18, 1980), Franklin App. No. 80AP-258. It is impossible for a court to determine on direct appeal from a criminal conviction whether counsel was ineffective in his representation where the allegation of ineffectiveness is based on facts dehors the record. Matthews, supra at ¶ 31, citing State v. Gibson
(1980), 69 Ohio App.2d 91, 95. To hold otherwise would open the door to pure speculation. State v. Madrigal (2000),87 Ohio St.3d 378, 390.
 {¶ 27} Because appellant has failed to establish that his trial counsel was ineffective or that appellant was prejudiced by his counsel's representation, we overrule appellant's second assignment of error.
 {¶ 28} Having overruled appellant's first and second assignments of error, we affirm the judgment of trial court.
Judgment affirmed.
Petree and McGrath, JJ., concur.